169 Cal.App.4th 654 (2008)
Estate of JEAN MARIE MOONEY, Deceased.
ANNE SCULLY, as Co-administrator, etc., et al., Petitioners and Appellants,
v.
THOMAS MURPHY et al., Claimants and Respondents.
No. A121935.
Court of Appeals of California, First District, Division One.
December 22, 2008.
*656 Evans, Latham & Campisi, James A. Barringer and Claudia J. Lowder for Petitioners and Appellants.
Thomas Murphy, in pro. per.; Nancy Danish, in pro. per.; Daniel Murphy, in pro. per.; and Edward Murphy, in pro. per., for Claimants and Respondents.

OPINION
MARGULIES, J.
Under a will executed in 1961, Jean Marie Mooney left the bulk of her estate to her father or, if he predeceased her, to her two sisters, Doris and Lucile, in equal shares. By the time Mooney passed away in 2007, her father and both sisters had predeceased her. Both sisters were survived by adult children. This brought California's antilapse statute, Probate Code[1] section 21110, into play. The probate court construed section 21110 to require that each of the surviving adult children of Doris and Lucile receive an equal, one-seventh share of Mooney's estate. Lucile's children appeal, contending that they were each entitled to receive a one-sixth share of the estate and Doris's four children were each entitled to a one-eighth share. We agree, and reverse the probate court's order.

*657 I. BACKGROUND
Mooney died on January 17, 2007. Her will, which was executed in 1961, devised certain specific items of real and personal property to her nieces and nephews, and devised the residue of her estate as follows: "I hereby give, devise and bequeath all of the rest, residue and remainder of my property, of whatever kind or nature and wheresoever situate, to my father, EDWARD J. MOONEY, provided, however, if he should predecease me, or die as a result of the same sickness, accident or calamity that may befall me, then and in that event, I hereby give, devise and bequeath such rest, residue and remainder of my property in equal shares to my two sisters, LUCILE MAY SCULLY and DORIS MURPHY." Decedent's father and both of her sisters predeceased her.
Under the will, the provision for Mooney's sisters was not conditioned on their surviving her, and no alternate disposition was provided for in the event they did not survive her. Under section 21110, the antilapse statute, if a bequest is made to kindred, and is not conditioned on survivorship and is not subject to an alternate disposition, and the beneficiary predeceases the transferor, the bequest passes to the predeceased beneficiary's issue. The only issue before us is how to divide Mooney's residual estate among the children of her two sisters.
Decedent's sister, Doris Murphy, is survived by four adult children: Thomas Murphy, Daniel Murphy, Edward Murphy, and Nancy Danish. Decedent's sister, Lucile May Scully, is survived by three adult children: Anne Scully, Charles Scully II, and Jean Bordon. Neither Doris Murphy nor Lucile May Scully left any issue of deceased children. Jean Bordon has disclaimed her interest in the estate in favor of her adult son, Bryan.[2] Jean Bordon has no other children or issue of deceased children.
On November 20, 2007, Anne Scully and Nancy Danish, as administrators with will annexed, filed their petition for final distribution. The petition proposed that one-half of the residue of the estate be distributed equally among Doris's four children (one-eighth each) and one-half of the estate be divided equally among Lucile's three children (one-sixth each). In an accompanying points and authorities, counsel for the administrators argued that the proper application of sections 240 and 21110 required this distribution.
*658 Based on its independent reading of the antilapse statute, the court directed the administrators to file an amended proposed distribution providing that the residue be distributed equally among Doris's and Lucile's children (one-seventh each). An unopposed motion by Anne Scully, Charles Scully II, and Bryan Bordon to set aside the court's order was denied.
This timely appeal followed.

II. DISCUSSION
(1) Section 21110, subdivision (a) provides in relevant part as follows: "[I]f a transferee . . . fails or is treated as failing to survive the transferor . . . the issue of the deceased transferee take in the transferee's place in the manner provided in Section 240." For purposes of section 21110, "transferee" is limited to "a person who is kindred of the transferor or kindred of a surviving, deceased, or former spouse of the transferor." (§ 21110, subd. (c).) Subdivision (a) does not apply if the instrument expresses a contrary intention or makes a substitute disposition. (§ 21110, subd. (b).)[3]
All of the conditions for the application of section 21110 are present here: (1) the testator attempted to devise the residue of her estate to her kin, (2) the intended devisees predeceased the testator, and (3) the will fails to evidence the testator's intent in that event. In those circumstances, section 21110 replaces the decedent's attempted devise to her sisters with a substitute disposition to her sisters' descendants. The section applies to residuary beneficiaries, as well as other types of beneficiaries. (Estate of Walker (1925) 196 Cal. 323, 331-332 [237 P. 1070] [construing predecessor statute].) Section 21110 is known as an "antilapse" statute because the attempted devises protected by it would otherwise lapse and the property would pass instead by intestacy: "Antilapse statutes serve an extremely important function in the law, for they give effect to strong human impulses in some cases and, in others, to what are perceived as highly probable intentions. They prevent unintended disinheritance of one or more lines of descent, by presumptively creating an alternative or substitute gift in favor of the descendants of certain *659 of the decedent's predeceased relatives." (Halbach & Waggoner, The Upc's New Survivorship and Antilapse Provisions (1992) 55 Albany L.Rev. 1091, 1099.)
This case focuses on the meaning of the statutory directive that "the issue of the deceased transferee take in the transferee's place in the manner provided in Section 240." (§ 21110, subd. (a).) Section 240 provides as follows: "If a statute calls for property to be distributed or taken in the manner provided in this section, the property shall be divided into as many equal shares as there are living members of the nearest generation of issue then living and deceased members of that generation who leave issue then living, each living member of the nearest generation of issue then living receiving one share and the share of each deceased member of that generation who leaves issue then living being divided in the same manner among his or her then living issue."
The trial court construed sections 21110 and 240 as requiring that each of the children of Doris and Lucile receive an equal one-seventh share of the residual estate, whereas counsel for the administrators had argued for a distribution "by representation" in which the four children of Doris would divide Doris's one-half share and the three children of Lucile would divide Lucile's one-half interest. In support of its holding, the court cited a portion of Estate of Begley (1988) 201 Cal.App.3d 791 [247 Cal.Rptr. 632] (Begley), in which the appellate court determined that the probate court had erred in distributing the one-fourth interest devised to the "heirs of Viola Davis" by "right of representation" when, in fact, each of Viola's living grandchildren two by one child of Viola's, who predeceased Begley, and one each by Viola's two other children, both of whom also predeceased Begleywas entitled to an equal share since the grandchildren were the "nearest generation of living issue" to Begley. (Id. at p. 797.)
In our view, the probate court misconstrued this portion of the Begley opinion. The testator in Begley had three living siblings when the will was executed in 1960Lena, Lulu, and John. (Begley, supra, 201 Cal.App.3d at p. 794.) A fourth sibling, Viola, was deceased when the will was executed. (Ibid.) The will specified that Begley's estate was to be divided in four equal shares between the three siblings who were alive in 1960 and "the Heirs" of Viola. (Ibid.) By the time of the testator's death in 1985, Lena, Lulu, and John had all died. Lena had nine living children at that time, as well as four living issue of one deceased child and two living issue of a second deceased *660 child. (Ibid.) Lulu and John had no issue. (Ibid.) All three of Viola's children had predeceased Begley, but four issue of these children survived, including two from one child, and one each from the other two deceased children. (Ibid.)
The probate court in Begley had divided the property as follows: The two children born to one of Viola's three children were to split one-third of Viola's one-fourth interest in the estate, while each of her other two grandchildren were to receive one-third of her one-fourth interest. (Begley, supra, 201 Cal.App.3d at p. 794.) The one-fourth interest devised to Lena was to be divided among Lena's children and grandchildren in accordance with former section 6147 (now § 21110). (Begley, at p. 795.) Consistent with section 240, the distribution of Lena's one-fourth interest among her children and grandchildren, as the issue of a predeceased devisee, was to be per stirpes, "in eleven equal shares, with the share of one deceased child being divided among four living issue and the share of the other deceased child being divided among two living issue." (Begley, at pp. 796, 797-798.) Finally, the combined one-half interest devised to Lulu and John would also be distributed "under section 6147 in the manner prescribed by section 240," with "Lena's and Viola's living and deceased children, with the deceased children's shares being divided among their living issue." (Id. at p. 795.)
The Court of Appeal held initially that the probate court erred in applying section 6147 to Lulu and John's one-half interest because Lulu and John had no issue. (Begley, supra, 201 Cal.App.3d at p. 795.) The statute specifies that "`the issue of the deceased devisee take in his or her place in the manner provided in . . . Section 240,'" but it specifies no alternative method of distribution in the case of a deceased devisee who has left no issue. (Begley, at p. 795, italics omitted.) According to the Begley court, it is therefore implicit in section 6147 that it has no application unless a deceased devisee has left issue. (Begley, at p. 795.) Instead, the statute governing lapsed devises former section 6148 (now § 21111, subd. (b))would govern the disposition of Lulu and John's combined one-half interest. That section required that the lapsed devises to Lulu and John were to pass to Lena's and Viola's descendants in proportion to their other interests in the estate. (Begley, at p. 796.)
The Court of Appeal found further error in the probate court's intended distribution to Viola's heirs. The court concluded that Viola's one-quarter interest should have been divided equally among all four of her grandchildren without regard to their deceased parents' shares. (Begley, supra, 201 Cal.App.3d at p. 797.) As the probate court here described it, the trial court in Begley was found to have erred in distributing Viola's share "`by right of representation.'" According to the probate court, Begley's reasoning in the *661 portion of the opinion dealing with Viola's share requires the same result herean equal division of Jean Mooney's residuary estate among all of her living nieces and nephews.
The problem with the court's analysis is that Begley did not base its holding with respect to Viola's share on the application of former section 6147. Instead, the Begley court reasoned that since Begley left the interest to Viola's heirs, the grandchildren's shares must be determined under former section 6151. (Begley, supra, 201 Cal.App.3d at p. 797.) That section required distribution of Viola's share under the intestate succession statute as if Viola "`were to die intestate at the time when the devise is to take effect in enjoyment and according to the California statutes of intestate succession in effect at that time.'" (Ibid., quoting former § 6151 (now § 21114, subd. (a).) Then as now, the intestate succession statute was section 240.[4] (Begley, at p. 797.) Her three children having predeceased her, the "nearest generation of issue then living" (§ 240) to Viola at the time of Begley's death were her four grandchildren. (Begley, at p. 797.) The antilapse statute never entered into the Court of Appeal's analysis of Viola's one-quarter share because the devise was to her heirs, and that devise never lapsed.
Although the disposition of Viola's share did not involve the application of the antilapse statute, the Begley court did apply that statute in upholding the probate court's distribution of Lena's one-fourth interest among her children and grandchildren. In that portion of the opinion, the court specifically approved of the probate court's distribution of Lena's one-fourth interest among her children and grandchildren in which each of the nine living children received a one-eleventh share, the one-eleventh share of one deceased child was divided among that child's four living issue, and the one-eleventh share of the other deceased child was divided among that child's two living issue. (Begley, supra, 201 Cal.App.3d at pp. 797-798.) That resulta distribution among Lena's issue by representationis consistent with the interpretation of section 21110 appellants advocate here. In its analysis of Begley, the probate court did not mention the distribution of Lena's share, which is the one portion of the opinion that does involve the application of the antilapse statute. The probate court's misreading of Begley seems to have led it astray in this case.
(2) In trying to understand the interplay between sections 21110 and 240, the probate court apparently reasoned that the "nearest generation of issue then living" under section 240 meant the generation with living members nearest to the testator, Jean Mooney. Since Mooney's parents and sisters were deceased and she had no issue, this would be the entire generation of her sisters' children who, on the probate court's theory, should receive equal *662 shares. But in focusing in that fashion on the language in section 240, the probate court gave too little weight to the phrasing of section 21110. Section 21110, subdivision (a) states that "the issue of the deceased transferee take in the transferee's place in the manner provided in Section 240." (Italics added.) The italicized phrase has two significant components. First, the words "the issue of the deceased transferee" mean that section 21110 is to be applied separately to the issue of each deceased transferee. The statute provides that the property devised to a single deceased transferee will be distributed among that transferee's descendants by the application of section 240. Nothing in the wording of section 21110 authorizes a court to lump Doris's descendants together with Lucile's descendants for purposes of determining how Mooney's separate bequests to her sisters are to be distributed among their issue.[5] Second, the words "take in the transferee's place" also must be given effect. In our view, that phrase precludes the deceased transferee's descendants from collectively taking any more or less by operation of section 21110 than the transferee would have taken if he or she had survived the testator. In other words, the deceased transferee's issue take through the transferee by representation. The trial court erred by reading section 240 independently of section 21110, and by determining that "the nearest generation of issue then living" for purposes of applying section 240 in this context was determined with respect to the testator rather than the deceased transferee.
Our interpretation of the interplay between sections 21110 and 240 is substantiated by tracing the evolution of section 21110's current language. Prior to 1985, the operative provision of section 21110's predecessor antilapse statute, former section 6147, read in relevant part as follows: "[I]f a devisee . . . fails to survive the testator . . . the issue of the deceased devisee take in his or her place by representation." (See Assem. Amend. to Assem. Bill No. 196 (1985-1986 Reg. Sess.) Mar. 18, 1985, § 8, italics added.) The 1985 amendment substituting the words "in the manner provided in Section 240" for "by representation" was made at the recommendation of the California Law Revision Commission, which deemed the change in wording to be "nonsubstantive." (Recommendation Relating to Distribution Under a Will or Trust (Jan. 1985) 18 Cal. Law Revision Com. Rep., com. foll. § 6, p. 283.)
*663 When section 6147 was first adopted in 1983, also upon the recommendation of the California Law Revision Commission, the Commission's comments stated that the statute's operative language was drawn from section 2-605 of the pre-1990 Uniform Probate Code. (Annual Report (Dec. 1983) 17 Cal. Law Revision Com. Rep. (1984) p. 875.) Section 2-605 stated in relevant part as follows: "[T]he issue of the deceased devisee . . . take in place of the deceased devisee and if they are all of the same degree of kinship to the devisee they take equally, but if of unequal degree [then] those of more remote degree take by representation." (8 West's U. Laws Ann. (1972) U. Prob. Code, § 2-605, p. 358.)
According to the Law Revision Commission's 1983 comments, the relevant language of section 6147 was also consistent with former section 92, the antilapse statute that section 6147 repealed and replaced in 1983. The intent that property was to pass by representation to the issue of a deceased transferee can also be seen in former section 92 which read in pertinent part as follows: "`[W]hen any estate is devised . . . to any kindred of the testator, and the devisee . . . dies before the testator, leaving lineal descendants, . . . such lineal descendants take the estate . . . in the same manner as the devisee . . . would have done had he survived the testator.'" (Historical and Statutory Notes, 52 West's Ann. Prob. Code (2002 ed.) foll. §§ 90-92, p. 83, italics added.) As explained in Estate of Pfadenhauer (1958) 159 Cal.App.2d 686 [324 P.2d 693], the purpose and effect of this language is to provide an alternative disposition of the deceased transferee's share of the estate that is deemed to be more in line with the testator's presumed wishes than intestacy: "If her sister Susan [the deceased transferee] had outlived the testatrix, Susan's children could later have received their mother's share of this property without in any way violating any intention expressed by this testatrix, and the will does not indicate any desire on the part of the testatrix to prevent such a result. Section 92 brings about the same result under the circumstances which here appear. It was designed for that very purpose . . . ." (Id. at p. 689, italics added.)
Despite the evolution of its language over the years, California's antilapse statute has consistently provided that when a bequest to a protected transferee would otherwise lapse due to the transferee's death, that bequest passes by right of representation to his or her descendants. The probate court erred in construing sections 21110 and 240 differently. The court's order must be modified to provide that Doris's one-half share of Jean Mooney's residual estate be divided equally among her four children and that Lucile's one-half share be divided equally among her three children, subject to any disclaimers of benefits that may apply.

*664 III. DISPOSITION
The probate court's order is reversed and remanded with directions that it be modified in accordance with the views expressed in this opinion. Appellants are to bear their own costs on appeal.
Marchiano, P. J., and Flinn, J.,[*] concurred.
NOTES
[1] All further statutory references are to the Probate Code.
[2] For purposes of this opinion we will disregard the effect of Jean Bordon's disclaimer.
[3] Although Mooney's father was also a "deceased transferee" for purposes of section 21110, subdivision (a), the father's issue would not take in his place under that subdivision. Subdivision (b) provides that "[t]he issue of a deceased transferee do not take in the transferee's place if the instrument expresses a contrary intention or a substitute disposition." Since Mooney's will provided for a substitute disposition of her residual estate to her sisters if Mooney's father predeceased her, no one would take as the father's issue under subdivision (a).
[4] At the time Begley was decided, section 240 was identical to its current version.
[5] It is noteworthy that under the probate court's approach, if Mooney had given unequal shares of her residual estate to her two sisters, that preference would be of no effect if both sisters predeceased her and left living children. Each child would receive one-seventh of the estate without regard to Mooney's preference. While such a result might be defensible, it is not the one contemplated by the standard antilapse statute. (See French, Antilapse Statutes are Blunt Instruments: A Blueprint for Reform (1985) 37 Hastings L.J. 335, 341 [antilapse statute perpetuates a preference for members of one generation into the next generation].)
[*] Judge of the Superior Court of Contra Costa County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.