[No. A123296. First Dist., Div. Two. Aug. 31, 2009.]

Estate of GLADYS MILDRED LENSCH, Deceased.
JASON LENSCH et al., Plaintiffs and Appellants, v.
DARIN WRIGHT, as Executor, etc., Defendant and Respondent.

## COUNSEL

Law Offices of Margaret M. Hand and Margaret M. Hand for Plaintiffs and Appellants.

Bien & Summers, Elliot L. Bien, Catherine S. Meulemans; Wilkins & Johnson, Alfred S. Wilkins and Elizabeth W. Johnson for Defendant and Respondent.

## OPINION

**HAERLE, Acting P. J.—**

### I. INTRODUCTION

Appellants Jason Lensch and Ean Lensch (appellants) appeal from the probate court's order denying their petition to determine survival and to determine persons entitled to distribution of the estate of their grandmother, Gladys Mildred Lensch, under Probate Code sections 220, 21109, and 21110.[1] They argue that the trial court erred in denying their requests for an evidentiary hearing as well as denying their petition. We agree and conclude

---

[1] All further statutory references are to the Probate Code, unless otherwise indicated.

that the trial court should have held an evidentiary hearing. Accordingly, we reverse the court's order, and remand this matter for an evidentiary hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On March 12, 2008, at 2:30 a.m. Gladys Lensch died in a San Mateo County nursing home. She was 98 years old. She left the following three-sentence holographic will: "I Gladys Lensch do hereby declare, being of sound mind, that my estate be equally divided between my daughter Claudia and my son Jay. [¶] Claudia being married has 2 daughters, and my son by a previous marriage has 2 sons. They will provide for the well being of my grandchildren in the event of my death or serious incapacity due to lengthy illness. [¶] God Bless the Family. [¶] Gladys Clausen Lensch May 10 1993."

Eleven hours after Gladys died, Jay, Gladys's son, was found dead in his home in Trinity County. He had shot himself with a 12-gauge shotgun. The time of death on Jay's death certificate was recorded as the time his body was found: 1:15 p.m. on March 12, 2008. Jay's body was cremated without an autopsy and his remains were buried five days later.

In a 10-page handwritten will, with a four-page addendum, Jay made small cash gifts to friends, and left another friend an undeveloped parcel of land. The residue of his estate was left in equal shares to the Unitarian Universalist Service Committee and Direct Relief International. He left nothing in his will to his two sons, appellants Jason and Ean Lensch.

On June 25, 2008, Jason and Ean Lensch filed a "Petition to Determine Survival and to Determine Persons Entitled to Distribution." This petition was verified by petitioners' attorney because petitioners reside "out of this county and state."

The petition asked the court to find that "it cannot be determined by clear and convincing evidence who died first, Gladys Mildred Lensch or her son, Petitioner's father, Jay Alfred Lensch. Because it cannot be determined who died first, Jay Lensch should not take under Gladys Lensch's will and his issue, Petitioners, should take in his place."

The petition stated that "Shortly after noon [on the same day Gladys Lensch died] the body of her son, Jay Lensch was found. Jay Lensch died in

his Trinity County home of a self-inflicted gunshot wound. Petitioners and their attorney spoke to the Trinity County Deputy Coroner who investigated Jay Lensch's death and the Deputy Coroner said that he could not determine the precise time of Jay Lensch's death. To Ean Lensch, the Deputy Coroner said that Jay Lensch had been dead at least 24 hours before his body was found and that death might have occurred two or more days earlier. To Petitioner's attorney, the Deputy Coroner said that Jay Lensch had last spoken to another person two days before his body was discovered and that death could have occurred any time between that conversation and the time of discovery. On the death certificate, the Deputy Coroner used the time of discovery as the time of death, as is customary in cases like this. The Deputy Coroner is certain that Jay died earlier than the time stated on the death certificate, 1:15 p.m., but explained to Petitioner's counsel that there is no way to tell what was the actual time of death." Petitioners asked the court to find that "it cannot be determined by clear and convincing evidence who died first, Gladys Clausen Lensch or Jay Alfred Lensch," and that the court deem Gladys to have survived Jay for the purpose of the transfers created by Gladys's will and that the court rule that the transfer made to Jay in Gladys's will fails.

On July 25, 2008, Jay's executor, respondent Darin Wright, filed an opposition to Jason and Ean's petition to determine survival. He argued that Jason and Ean had the burden of proving that Jay did not survive Gladys. He also argued that survival was not required by the terms of Gladys's will. Relying on the death certificate of both decedents, respondent argued that because death certificates are proof of time of death, and claimants' petition was based on "inadmissible opinions, speculation, and hearsay," the only evidence of time of death was the death certificate.

At a brief hearing on July 30, 2008, the court noted that its tentative ruling was that "there is no requirement for survival in the testamentary document." Petitioners immediately requested an evidentiary hearing. Counsel argued that Jay was required to survive Gladys in order to take under her will. The court rejected this argument and also ruled, in the alternative, that even if there was a survival requirement "the only evidence before the court being the death certificates demonstrate that Mr.—not Mr. Lensch—it is Mr. Lensch did survive his mother." Counsel pointed to "sworn testimony of my client who spoke to the coroner who declared that the time of death of Jay Lensch could not be determined." The court ruled that this statement was hearsay. At two other points in the hearing, appellants repeated their request for an evidentiary hearing.

The court denied the petition to determine survival. The court held that "the evidence offered shows that decedent's will did not require survival, but

nevertheless, that Jay Lensch survived decedent Gladys Mildred Lensch, and that no further evidentiary hearing is required."

This timely appeal followed.

## III. DISCUSSION

A. *Survivorship*

 Jason and Ean contend the trial court erred in denying their petition on the basis that Gladys's will did not require that Jay survive her in order to take under her will. We exercise de novo review in interpreting the terms of Gladys's will (*Estate of Edwards* (1988) 203 Cal.App.3d 1366, 1371 [250 Cal.Rptr. 779]) and conclude that, although the trial court was correct in finding that Gladys's will contains no survivorship requirement, it erred in denying appellants' petition on this basis, apparently because it did not understand the legal consequences of the lack of a survivorship requirement in Gladys's will.

Gladys's will does not express any intent with regard to survivorship. Nor does it contain any provision for an alternate disposition in the event Jay predeceased her. In this situation, we look to section 21109 and the antilapse statute, section 21110, for guidance. Section 21109, subdivision (a), provides that "A transferee who fails to survive the transferor of an at-death transfer or until any future time required by the instrument does not take under the instrument." Section 21110, subdivision (a), provides that "Subject to subdivision (b), if a transferee is dead when the instrument is executed, or fails or is treated as failing to survive the transferor or until a future time required by the instrument, the issue of the deceased transferee take in the transferee's place in the manner provided in Section 240." Subdivision (b) provides, however, that "[t]he issue of a deceased transferee do not take in the transferee's place if the instrument expresses a contrary intention or a substitute disposition. A requirement that the initial transferee survive the transferor or survive for a specified period of time after the death of the transferor constitutes a contrary intention. A requirement that the initial transferee survive until a future time that is related to the probate of the transferor's will or administration of the estate of the transferor constitutes a contrary intention."

 Therefore, in the absence of any requirement of survivorship, "a transfer that is to occur on the transferor's death lapses if the transferee dies first." (*Burkett v. Capovilla* (2003) 112 Cal.App.4th 1444, 1449 [5 Cal.Rptr.3d 817].) As the court explained in *Estate of Mooney* (2008) 169 Cal.App.4th 654, 657 [87 Cal.Rptr.3d 115], "[u]nder . . . the antilapse statute, if a bequest

is made to kindred, and is not conditioned on survivorship and is not subject to an alternate disposition, and the beneficiary predeceases the transferor, the bequest passes to the predeceased beneficiary's issue."

Here, as the probate court found, Gladys's bequest was not conditioned on Jay's survival. Nor did she make an alternate disposition. Therefore, under sections 21109 and 21110, if Jay died before Gladys, then Gladys's bequest to Jay fails under section 21109 and passes to Jay's children, appellants, under section 21110. Put simply, the court's finding that Gladys's will contained no survival requirement was the beginning of the story, not the end.

Respondent, who seems to understand at this point in the proceedings the significance of the fact that Gladys's will contained neither a survival requirement nor an alternate disposition, argues that Jay's will, in which Jay complains about his sons' conduct toward him, constitutes extrinsic evidence from which the probate court "could reasonably infer . . . that Gladys knew and disapproved of [Jason and Ean]'s conduct, and for that reason intended in her will to give Jay complete discretion over his bequest whether he survived her or not." In other words, respondent contends that the trial court should have construed Gladys's will as containing a provision that Jay was not required to survive her based on language contained in Jay's will, which was written well after Gladys's. We disagree.

■ The rules for construing the meaning of a will are well established. " 'The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible.' [Citation.] The rule is imbedded in the Probate Code. [Citation.] Its objective is to ascertain what the testator meant by the language he used." (*Estate of Russell* (1968) 69 Cal.2d 200, 205–206 [70 Cal.Rptr. 561, 444 P.2d 353], fns. omitted (*Russell*).)

■ "[E]xtrinsic evidence of the circumstances under which a will is made (except evidence expressly excluded by statute) may be considered by the court in ascertaining what the testator meant by the words used in the will. If in the light of such extrinsic evidence, the provisions of the will are reasonably susceptible of two or more meanings claimed to have been intended by the testator, 'an uncertainty arises upon the face of a will' (§ 105) and extrinsic evidence relevant to prove any of such meanings is admissible (see § 106), subject to the restrictions imposed by statute (§ 105). If, on the other hand, in the light of such extrinsic evidence, the provisions of the will are not reasonably susceptible of two or more meanings, there is no uncertainty arising upon the face of the will (§ 105; [citations]) and any proffered evidence attempting to show an intention *different* from that expressed by the

words therein, giving them the only meaning to which they are reasonably susceptible, is inadmissible. In the latter case the provisions of the will are to be interpreted according to such meaning." (*Russell, supra,* 69 Cal.2d at p. 212, fns. omitted.)

██ Finally, "it is 'solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.' . . . Accordingly, 'an appellate court is not bound by a construction of a document based solely upon the terms of the written instrument without the aid of extrinsic evidence, where there is no conflict in the evidence, or a determination has been made upon incompetent evidence. [Citations.]' [Citations.]" (*Russell, supra,* 69 Cal.2d at p. 213, citation omitted.)

Applying these principles to the case before us, we conclude that the language in Jay's will expressing his disappointment in his sons does not, as respondent contends, indicate that Gladys intended that, should Jay predecease her, his children would not share in her estate. Jay's will demonstrates only that Jay appears to have disapproved of his sons when he wrote *his* will. There is no evidence that Gladys was even aware of her son's difficult relationship with his children or that she agreed with her son's assessment of his children's behavior. To the contrary, her will explicitly mentions her desire that Jay and his sister care for Gladys's grandchildren, which would include appellants Jason and Ean. If anything, Gladys's will indicates that it was her intent that her estate benefit her grandchildren as well as her children.

Having correctly concluded that Gladys's will contained no requirement that Jay survive her and in light of the fact that the will also contains no provision for an alternate disposition, the next step in the probate court's analysis was to consider the issue of whether Jay did, in fact, survive Gladys. It is this issue to which we next turn.

## B. *Evidentiary Hearing*

Appellants argue that the trial court erred in finding, based on the time of death reported in Jay's death certificate, that Gladys predeceased Jay. This conclusion led to the denial of appellants' claim that, under the antilapse statute, they were entitled to a share of Gladys's estate. The probate court should have held an evidentiary hearing on this issue and erred in denying appellants' request for one.

██ Appellants filed a verified petition to determine order of death under section 230. Under section 1043, subdivisions (a) and (b) "[a]n interested person may appear and make a response or objection" in either writing or in person before or at the hearing. The court then may "in its discretion . . .

either hear and determine the response or objection at the hearing, or grant a continuance for the purpose of allowing a response or objection to be made in writing." (§ 1043, subd. (b).) The Probate Code, therefore, specifically allows for objections to be made close to or at the time of the hearing, and also gives the court discretion to continue a hearing to permit further development of an objection.

■ Section 1022 specifies that "[a]n affidavit or verified petition shall be received as evidence when offered in an uncontested proceeding under this code." When a petition is contested, as it was here, "affidavits and verified petitions may not be considered as evidence at a contested probate hearing." (*Evangelho v. Presoto* (1998) 67 Cal.App.4th 615, 620 [79 Cal.Rptr.2d 146].) Rather, absent a stipulation among the parties to the contrary, each allegation in a verified petition and each fact set forth in a supporting affidavit must be established by competent evidence. (*Ibid.*; *Estate of Duncan* (1969) 1 Cal.App.3d 212, 215 [81 Cal.Rptr. 568].) This rule is consistent with the long-established rule of civil practice that " '[a] party is entitled to have received in evidence and considered by the court, before findings are made, all competent, relevant and material evidence on any material issue.' " (*Meadows v. Lee* (1985) 175 Cal.App.3d 475, 488 [221 Cal.Rptr. 22]; see also § 1046.)

In *Estate of Bennett* (2008) 163 Cal.App.4th 1303 [78 Cal.Rptr.3d 435], the court held it was an abuse of discretion to deny a request for an evidentiary hearing of a contested motion. The *Bennett* court pointed out that, because the hearing was contested, the parties could not proceed on submitted declarations and verified pleadings. Instead, the *Bennett* court held, an evidentiary hearing was required and the court erred in denying a request for one.

Here, appellants' verified petition alleged that, shortly after noon on the same day Gladys died, Jay's body was found. The petition alleged (based on a conversation between counsel, petitioners and the Trinity County deputy coroner), that the coroner could not determine the precise time of death. The petition alleged that the "Deputy Coroner said that Jay Lensch had been dead at least 24 hours before his body was found and that death might have occurred two or more days earlier." Further, the deputy coroner "used the time of discovery as the time of death, as is customary in cases like this." However, "the Deputy Coroner is certain that Jay died earlier than the time stated on the death certificate . . . ."

Had the hearing appellants requested been uncontested, "[a]n affidavit or verified petition shall be received as evidence . . . ." (§ 1022.) However, on

July 25, 2008, respondent filed an opposition to appellants' petition.[2] In his opposition, respondent objected specifically to appellants' petition on the ground that it was "inadmissible opinions, speculation, and hearsay, and . . . not 'proper evidence.' " Respondent attached to his opposition copies of the death certificates of Jay and Gladys and speculated that it was unlikely that any evidence could be produced that might overcome the presumption set out in Health and Safety Code section 103550.[3] Respondent's opposition, therefore, transformed appellants' unopposed petition to a contested one. Under these circumstances, the probate court should have granted the request for an evidentiary hearing that appellants made three times at the very brief hearing on their petition.

Respondent does not argue that appellants were not entitled to such a hearing. Rather, he contends that appellants waived their right to an evidentiary hearing because they failed to make a timely and proper request for a hearing. Respondent also argues that appellants are estopped from raising this issue because their own papers "asserted unequivocally that no live testimony was necessary." We reject both these arguments.

First, with regard to waiver, respondent argues that appellants were required to make a request by July 25, 2008, for an evidentiary hearing and, having failed to do so, waived their right to this hearing. Respondent contends that this "deadline emanated from state and local rules governing motion procedure, and no special rule in the Probate Court contravened them." Specifically, respondent cites rule 3.1306(b) of the California Rules of Court and the Superior Court of San Mateo County, Local Rules, rule 3.12.

He is incorrect. As appellants point out, California Rules of Court, rule 3.1100 makes clear that rule 3.1306(b) applies to "proceedings in civil law and motion . . . and to discovery proceedings in family law and probate." "Law and motion" is further defined as "any proceedings . . . [¶] . . . except for causes arising under . . . the Probate Code . . . ." (Cal. Rules of Court, rule 3.1103(a)(1).) And the Superior Court of San Mateo County, Local Rules, rule 3.12, which simply states "Reference CRC, rule 3.1306," does not provide any additional support for respondent's argument.

---

[2] This opposition was apparently prepared on or about July 17, 2008, but the record does not contain a copy of any proof of service.

[3] Health and Safety Code section 103550 provides: "Any birth, fetal death, death, or marriage record that was registered within a period of one year from the date of the event under the provisions of this part, or any copy of the record or part thereof, properly certified by the State Registrar, local registrar, or county recorder, is prima facie evidence in all courts and places of the facts stated therein." Of course, a death certificate is " 'subject to rebuttal and to explanation.' " (*Morris v. Noguchi* (1983) 141 Cal.App.3d 520, 523, fn. 1 [190 Cal.Rptr. 347]; see also *People v. Holder* (1964) 230 Cal.App.2d 50, 56 [40 Cal.Rptr. 655].) And a party may correct a statement in a death certificate by calling as a witness the person who made the death certificate. (See *Estate of Scott* (1942) 55 Cal.App.2d 780, 782–783 [131 P.2d 613].)

The only case respondent offers in support of this argument, *Kennedy v. South Coast Regional Com.* (1977) 68 Cal.App.3d 660 [137 Cal.Rptr. 396], is of no assistance. In *Kennedy*, the court held that "[f]ormal findings were not requested and were, therefore, waived. [Citations.] . . . 'Because neither side requested findings of fact and conclusions of law, we must assume that the court found all the facts necessary to support the judgment.'" (*Id.* at pp. 666–667.) There is nothing about this case that supports respondent's contention that appellants were required to request an evidentiary hearing by July 25, 2008. In fact, when the issues underlying appellants' petition were disputed, appellants properly invoked their fundamental right to an evidentiary hearing on them. At no point did they waive this right.

We also reject respondent's argument that appellants are estopped from raising this issue under the principle of invited error in which a "party by his conduct induces the commission of an error" and is, therefore, estopped from asserting it as grounds for reversal. (*California Coastal Com. v. Tahmassebi* (1998) 69 Cal.App.4th 255, 260 [81 Cal.Rptr.2d 321].) Respondent asserts that appellants followed a deliberate trial strategy in which they chose to rely on the allegations of their petition. This is an inaccurate description of the procedure followed by appellants, and ignores the fact that appellants requested an evidentiary hearing shortly after they learned that their petition was opposed. The Probate Code anticipates that a party may submit a matter on a verified petition alone. However, once a petition is contested, as this one was, the court erred in refusing to permit appellants to proceed to an evidentiary hearing on the question of whether Jay survived Gladys.

## C. *Standard and Burden of Proof*

Appellants argue that the applicable standard of proof on the issue of whether Jay survived Gladys is the clear and convincing evidence standard set out in section 220 and section 21109. Appellants further argue that respondent bears this burden because he is the party whose claim is dependent on survivorship. Respondent, on the other hand, contends that the clear and convincing standard of proof does not apply to this question. Respondent also contends that appellants bear the burden of proof. In order to assist the probate court on remand, we will clarify this issue.

### 1. *Standard of Proof*

Section 21109 provides that "(a) A transferee who fails to survive the transferor of an at-death transfer or until any future time required by the instrument does not take under the instrument. (b) If it cannot be determined by clear and convincing evidence that the transferee survived until a future time required by the instrument, it is deemed that the transferee did not survive until the required future time."

When it was first enacted in 1994, section 21109 contained a subdivision (b) that provided "[i]f it cannot be established by clear and convincing evidence that the transferee has survived the transferor, it is deemed that the beneficiary did not survive the transferor." (Stats. 1994, ch. 806, § 41, p. 4022.) In 2002, section 21109, subdivision (b) was deleted. (Stats. 2002, ch. 138, § 18.) The Law Revision Commission comment to this change in section 21109 is as follows: "Subdivision[] (b) [is] deleted as unnecessary. The general 'clear and convincing evidence' standard of Section 220 applies." (Recommendation: Rules of Construction for Trusts and Other Instruments (Nov. 2001) 31 Cal. Law Revision Com. Rep. (2001) p. 196.) Section 220 provides that "if the title to property or the devolution of property depends upon priority of death and it cannot be established by clear and convincing evidence that one of the persons survived the other, the property of each person shall be administered or distributed, or otherwise dealt with, as if that person had survived the other." Under section 220, then, it must be shown, by clear and convincing evidence, that Jay survived Gladys or her gift to him will pass to appellants pursuant to the antilapse statute.

Respondent, however, argues that, because section 21109 does not specify what standard of proof applies in determining whether the transferee fails to survive the transferor (as opposed to a failure to survive until "the required future time" covered by § 21109, subd. (b)), then the clear and convincing standard of proof does not apply to the issue of whether a beneficiary survived the transferor of an at-death transfer. Respondent's argument fails for the very basic reason that it ignores the relevant legislative history of section 21109, which makes quite clear that section 220 applies to this issue.

### 2. *Burden of Proof*

█ It is well established that the party whose claim is "dependent on survivorship" bears the burden of proof in an action to determine order of death. (*Estate of Rowley* (1967) 257 Cal.App.2d 324, 333 [65 Cal.Rptr. 139] (*Rowley*).) For example, in *Rowley*, Rowley and her beneficiary, Cooper, died together in a car accident. Rowley's executor filed a petition, alleging that Rowley and Cooper either died at the same time or there was insufficient evidence to establish who died first and in either case the antilapse statute barred Cooper from taking under Rowley's will. Cooper's executor opposed this petition, arguing that Cooper had survived Rowley and, therefore, was entitled to take under Rowley's will. The residual beneficiaries of Rowley's will also filed a response, agreeing with the executor that Cooper and Rowley died at the same time or it could not be determined who died first and, therefore, they should take under Rowley's will. The court noted that Cooper, the beneficiary whose claim depended on surviving Rowley, had the burden of proof. (*Ibid.*)

Appellants' petition, like that of the executor in *Rowley*, asserts that the order of death in this case cannot be determined by clear and convincing evidence. Respondent opposed this petition, arguing that Jay did in fact survive Gladys and, therefore, Jay should take under Gladys's will. Respondent's claim, like the claim of the beneficiary in *Rowley* depends on his having survived Gladys. Respondent, therefore, bears the burden of proof.

Respondent, however, contends that there is "no special rule of proof or practice in the Probate Code governing this case," and therefore, under *Estate of Della Sala* (1999) 73 Cal.App.4th 463 [86 Cal.Rptr.2d 569], appellants bear the burden of proof because they filed a petition to determine order of death, are therefore the parties seeking relief and, accordingly, must bear the burden of proof. We do not agree.

In *Estate of Della Sala*, the decedent's son filed a petition under the pretermitted heir statute alleging, as required by the statute, that his father believed him to be dead when he made his will and, therefore, he was entitled to take under his father's will. The court found that the son bore the burden of proof on this issue: "A party in a civil action has the burden of proof as to each fact essential to his claim for relief. (Evid. Code, § 500.) In the probate of [father's] estate, the paramount concern must be to ascertain and effectuate [father's] intent. (§ 21102.) [Father's] will expresses an unambiguous intent that his estate is to be distributed to Father Flanagan's Boys' Home. Petitioner desires to override that expressed intent and to obtain a distribution contrary thereto. It is petitioner who must bear the burden of proving all facts essential to such a distribution. [Citations.]" (*Estate of Della Sala, supra,* 73 Cal.App.4th at p. 470.)

*Estate of Della Sala* does not, as respondent contends, stand for the proposition that the petitioning party must always bear the burden of proof. As appellants point out, the personal representative of Gladys's estate, Borel Bank, could also have petitioned to determine order of death under section 231 in order to properly distribute Gladys's estate, as the executor in *Rowley* did. Given that more than one person was permitted to initiate proceedings in this case, it is unreasonable to assume that the petitioner must always bear the burden of proof.

■ Instead, as one court has pointed out, the burden of proof is determined "functionally, assigning the role of 'plaintiff' to the party seeking to upset the status quo." (*Conservatorship of Hume* (2006) 140 Cal.App.4th

1385, 1392 [44 Cal.Rptr.3d 906].) Applying *Hume* to this case, in the absence of evidence of whether Jay or Gladys died first, then Gladys's gift to Jay would pass to appellants, as though Gladys had survived Jay under section 220. This state of affairs is the status quo. The claim that Jay survived Gladys upsets the status quo. In addition, respondent is the party to whom proof of survival is essential to taking under her will. He, therefore, bears the burden of proof.

Finally, respondent argues that the burden of proof in this case is established not by the general principles spelled out in *Rowley* and *Hume*, but by Health and Safety Code section 103550, which provides as set forth in footnote 3, *ante*. Respondent argues that appellants must controvert the prima facie evidence contained in the death certificates of Gladys and Jay and, therefore, appellants bear the overall burden of proof on the question of survivorship.

We cannot agree. Health and Safety Code section 103550 creates a presumption that the evidence contained in certain public records is correct, a presumption designed to permit the introduction of such records over hearsay objections and to obviate the need for live testimony in instances in which a fact contained in these records is not in dispute. (*Bohrer v. County of San Diego* (1980) 104 Cal.App.3d 155, 164 [163 Cal.Rptr. 419].) As one court has described it, this presumption constitutes " 'circumstantial evidence' " from which the trier of fact may infer that the certificate is correct, " 'unless contradicted and overcome by other evidence.' " (*Romero v. Volunteer State Life Ins. Co.* (1970) 10 Cal.App.3d 571, 580 [88 Cal.Rptr. 820]; see also *Morris v. Noguchi, supra,* 141 Cal.App.3d at p. 523; *People v. Holder, supra,* 230 Cal.App.2d at p. 56.)

Respondent, however, asserts that Health and Safety Code section 103550 implements important public policies, and, therefore, its presumption is a presumption affecting the burden of proof. (Evid. Code, § 605.) Respondent argues, therefore, that because appellants must rebut the presumption contained in Health and Safety Code section 103550, they carry the overall burden of proof on the issue of survivorship, regardless of the far more specific authority we have discussed establishing that respondent bears the burden of proof. This is incorrect. Health and Safety Code section 103550, which simply expedites the proof of certain facts, cannot be characterized as a statute that implements important public policies and, therefore, creates a presumption affecting the burden of proof, as provided in Evidence Code section 605. Existing case law makes clear that respondent bears the burden of proof on this issue.

## IV. DISPOSITION

The order is reversed and the cause is remanded for an evidentiary hearing consistent with the views expressed in this opinion. Appellants shall recover costs on appeal.

Lambden, J., and Richman, J., concurred.