Filed 6/25/14  Estate of Fontaine CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Estate of ELIZABETH HOULT FONTAINE, Deceased. | |
| JENNIFER HOULT,  Petitioner and Respondent,  v.  JASON FONTAINE,  Objector and Appellant. | G048590  (Super. Ct. No. 30-2013-00625456)  O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Caryl A. Lee, Judge.  Reversed.

Law Office of John K. York and Celinda Tabucchi for Objector and Appellant.

Jennifer Hoult, in pro. per., for Petitioner and Respondent.

\*        \*        \*

On December 14, 2009, Elizabeth Hoult Fontaine, her two young daughters, and her mother Bonnie Hoult died tragically in murder-suicide shootings by Bonnie. Jason Fontaine was the father of the two young children.[1] He was also Elizabeth's estranged husband. At the time of the shootings, Jason and Elizabeth were living apart while embroiled in divorce proceedings, including a heated child custody battle.[2]

About three years after Elizabeth's death, her cousin Jennifer Hoult filed a petition for probate of Elizabeth's will and for appointment as the administrator. Jason filed written objections to Jennifer's petition. Jason then filed a competing petition for probate of Elizabeth's will and to select the administrator. Jennifer filed written objections to Jason's petition.

At a hearing, Jason asked the court for an evidentiary hearing on the issues raised in his objections to Jennifer's petition, but the court denied his request and granted Jennifer's petition without a trial. Jason appeals from the court's order granting Jennifer's petition.[3] (Prob. Code, § 1303, subd. (a).)[4] We conclude the court erred by

---

[1] For brevity and to avoid confusion, we refer to the Fontaines and the Hoults individually in this opinion by their first names. We mean no disrespect.

[2] Both Jason and Jennifer refer in their appellate briefs to Elizabeth's allegations that Jason had sexually abused the children. Jason and Jennifer disagree on whether the Orange County probate court found those allegations to be untrue. The children were ages 2 and 4, respectively, at the time of the shootings.

[3] Jason also asks this court, in the event it reverses the order granting Jennifer's petition for probate, to provide "direction on the notice and publication requirements for competing petitions [as it] would be helpful." That issue is outside the scope of this appeal. (Cal. Rules of Court, rule 8.100(a)(2) [notice of appeal "identifies the particular judgment or order being appealed"].)

[4] All statutory references are to the Probate Code.

denying Jason's request for an evidentiary hearing. Accordingly, we reverse the order and remand this matter for an evidentiary hearing on Jennifer's petition.

FACTS

*The Competing Petitions*

In January 2013, Jennifer petitioned for probate of Elizabeth's will and for letters of administration. Elizabeth's will named Jennifer as the executor in the event that Bonnie were deceased. The will named the Fontaines' daughters as the sole beneficiaries.

In March 2013, Jason filed written objections to Jennifer's petition. He argued that probating Elizabeth's estate served no purpose because the estate had no assets (since Elizabeth's assets had been transferred to him as her "sole heir"), and because creditors of the estate could bring a direct action against him under the Probate Code.[5] Jason also argued that Jennifer waived her priority for appointment as executor by filing for probate over three years after Elizabeth's death.

In Jennifer's reply to Jason's objections, she argued that, because Elizabeth's estate has unpaid creditors, the court lacked discretion to refuse to issue letters of administration. Jennifer further argued that she had good cause for the delayed filing of her petition. She declared on information and belief that Elizabeth's former employer (Howrey, LLP) had possessed Elizabeth's will from the time Elizabeth died until it was located by the Howrey bankruptcy trustee, and that, prior to such discovery by the trustee, Jennifer had repeatedly tried to locate the will but was told by individuals

---

[5] Although Jason's written objections did not specify the sole heir's identity, Jason acknowledges in his opening brief that he is the heir whom estate creditors are authorized to sue directly. In a subsequent court filing, Jason stated that he and Elizabeth's father Charles are her sole heirs.

3

(including an attorney on Howrey's bankruptcy committee) that they could not find it. After the Howrey bankruptcy trustee found the will, Jennifer arranged to have it lodged with the court. Jennifer also contended that Jason is a legal adversary of Elizabeth's estate and therefore lacked standing to select the estate's legal representative. She alleged that Jason had brought lawsuits in which he stood "simultaneously as Plaintiff and Defendant," and attached copies of Jason's pleadings in cases in which he was suing, among other defendants, Bonnie's estate (of which Jason was the special administrator). She also attached a letter from a psychologist stating he planned to file a creditor's claim against Elizabeth's estate as soon as an executor was appointed and that he supported Jennifer's petition to be the executor.

In March 2013, Jason filed a competing petition for probate of Elizabeth's will, seeking to have Elizabeth's father Charles appointed as administrator. (Jennifer's declaration supporting her petition had attached, as an exhibit, Elizabeth's January 2008 letter revealing she had been estranged from her father for at least 23 years.)

Jennifer objected to Jason's petition and argued that the court must dismiss it with prejudice because, inter alia, (1) Elizabeth died testate and designated Jennifer as executor, and (2) Jason is a legal adversary of Elizabeth's estate and therefore lacks standing to select the estate's legal representative. Jennifer attached the statement or declaration, respectively, of two attorneys who had represented Elizabeth in her dissolution proceeding against Jason, and believed it was in the best interest of all creditors of the estate that Jennifer be appointed administrator and *not* a person selected by Jason, given Jason's litigious behavior over the past 3 years which had depleted the estate's resources.

4

*The Court's Rulings*

The first hearing on the competing petitions took place on May 9, 2013. At the outset, the court stated that it saw "this as a contested matter quite clearly that we'll need to refer to a trial court," and later reiterated the dispute was "full of triable issues."

The court then indicated that, pursuant to the probate notes, Jason was required to publish notice of his petition. Jason's counsel replied that, because Jennifer had published notice of her petition, it was the court's custom and practice not to require publication of notice of a competing petition. The court stated this was "not the normal competing petition situation" and consequently the court would require publication by Jason. Jason's attorney asked the court to take the matter under submission and allow the attorney to brief the issue. The attorney asked for a continuance to May 23. The court continued the matter to June 13 to give Jennifer time to reply to Jason's attorney's brief. The court explained that its calendar was a pretrial calendar and when it had "everybody ready for a trial, [it would] send it to the trial department."

At the June 13 continued hearing, Jason's counsel stated she had brought copies of sections 8000 and 8004 to court to show that publication is not needed for a competing petition. Jennifer, acting in propria persona, argued that Jason's counsel had requested the continuance in order to file a brief on the issue but never filed a brief (although she faxed Jennifer) and had therefore waived the issue. The court stated it (the court) was requiring publication.

The court announced its tentative ruling was that Jennifer's petition was ready for approval and that Jennifer had priority under section 8420. Jason's counsel argued that because Jason had filed written objections, the case was in a pleading status and Jason was entitled to a trial with an opportunity to present evidence and substantiate his objections.

Jennifer stated she had no objection to putting the competing petitions down for trial, although she saw no legal reason for it, given that Jason had failed to

5

publish notice and that three creditors of the estate had filed objections to Jason's petition. Jennifer raised the further problem that Jason and his counsel were adversaries of Elizabeth's estate and presently litigating two civil actions attacking Elizabeth's contractual rights, one of which was set for trial on July 2. Jennifer argued that if the current matter (i.e., appointing a legal representative for Elizabeth's estate) were set for trial *after* July 2, it would "irrevocably prejudice the rights" of Elizabeth's estate, since the estate was currently unrepresented. Jennifer therefore asked the court to immediately appoint Jennifer to defend Elizabeth's estate "against [Jason's] pending attacks." Jennifer also argued that Jason and his counsel had "delayed another three months since the hearing on [Jennifer's] petition was first scheduled, all for nothing."

The court approved Jennifer's petition, finding, inter alia, that Jennifer had good cause for the delay in filing her petition.

Jason's counsel again objected that the court had failed to allow Jason an evidentiary hearing.

DISCUSSION

Jason contends the court erred by denying his attorney's request for an evidentiary hearing. Jennifer counters that in six months of litigation on the competing petitions, Jason never cited any factual evidence supporting either his objection or his petition.

"Except to the extent that [the Probate Code] provides applicable rules, the rules of practice applicable to civil actions . . . apply to, and constitute the rules of practice in, proceedings under [the Probate Code]." (§ 1000.) The Probate Code specifically provides that an "affidavit or verified petition shall be received as evidence *when offered in an uncontested proceeding* under this code." (§ 1022, italics added.) But "'affidavits and verified petitions may not be considered as evidence at a contested

6

probate hearing.'  [Citation.]  Rather, absent a stipulation among the parties to the contrary, each allegation in a verified petition and each fact set forth in a supporting affidavit must be established by competent evidence."  (*Estate of Lensch* (2009) 177 Cal.App.4th 667, 676.)  In *Estate of Bennett* (2008) 163 Cal.App.4th 1303, 1308, the appellant contended that the trial court "'erred in failing to accord . . . an evidentiary hearing where live witnesses would testify.'"  We agreed and, based on sections 1000 and 1022, "conclude[d] the probate court erred in failing to conduct an evidentiary hearing."  (*Estate of Bennett*, at p. 1308.)

Here, Jason objected to Jennifer's petition, resulting in a contested proceeding.  He did not agree to the court's deciding the matter based on declarations, affidavits, and verified petitions.  Instead, his counsel expressly requested an evidentiary hearing.  Whether Jennifer had good cause for her delay was a factual question.  The court erred by denying Jason an evidentiary hearing.

DISPOSITION

The order is reversed and the cause is remanded for an evidentiary hearing. Jason shall recover his costs on appeal.

IKOLA, J.

WE CONCUR:

O'LEARY, P. J.

THOMPSON, J.

7