[No. C027688. Third Dist. July 12, 1999.]

Estate of ATTILIO DELLA SALA, Deceased.
ANTHONY DELLA SALA, Petitioner and Appellant, v.
FATHER FLANAGAN'S BOYS' HOME, Objector and Respondent.

**COUNSEL**

William Walters for Petitioner and Appellant.

Kathleen R. Lazard for Objector and Respondent.

## OPINION

**SCOTLAND, P. J.**—Anthony Della Sala (petitioner) appeals from a judgment denying his petition for entitlement to assets of the estate of his father, Attilio Della Sala (Attilio). Attilio died testate without making any provision in his will for petitioner. The trial court found that petitioner was not entitled to assets of the estate as a pretermitted heir because Attilio did not believe petitioner was dead when Attilio executed his will. (Prob. Code, § 6572; further section references are to the Probate Code unless specified otherwise.)[1]

Petitioner contends the trial court erred in allocating to him the burden to prove his claim that Attilio believed petitioner was dead when the will was executed and, for this reason, did not provide for petitioner in the will. In petitioner's view, defendants Alma Pitman, Attilio's executor, and Father Flanagan's Boys' Home, Attilio's beneficiary, should bear the burden of disproving his claim to the estate as a pretermitted heir and that, with the burden of proof thus placed, the evidence compels a judgment in petitioner's favor. We disagree.

When Attilio signed his will, section 6572 stated that, if at the time of the execution of a will the testator failed to provide in the will for a living child solely because the testator believed the child was dead, or was unaware of the child's birth, the child should receive that portion of the estate the child would have received had the testator died intestate.

As we will explain, a party in a civil action, including a probate proceeding, bears the burden of proof as to each fact essential to the party's claim for relief. Accordingly, the trial court correctly held that an omitted child who seeks a distribution contrary to the provisions of a will has the burden of proving all facts essential to a distribution pursuant to section 6572 (now section 21622). As the evidence supports the trial court's determination that Attilio did not believe petitioner was dead when the will was executed, we shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Attilio died in January 1996, at the age of 95 years. For many years, he had lived in Westwood, in Lassen County. Attilio was very private, even

---

[1] At the time Attilio executed his will, the pretermitted heir statute was section 6572. (Stats. 1983, ch. 842, §§ 55, 58, pp. 3090, 3092.) In 1997, the statute was repealed and reenacted as section 21622. (Stats. 1997, ch. 724, § 34.) The 1997 amendment does not apply where, as here, the decedent died before January 1, 1998. (§ 21630.) Therefore, we shall use the numerical designation of the statute in effect at the execution of Attilio's will and at the time of his death, i.e., section 6572.

secretive, about his personal affairs. He lived with Ramona Gomez for many years and they held themselves out as husband and wife, although they did not actually marry until 1988.

Pitman, the executor of the estate, met Attilio in 1964 and performed financial services for him over the years. Attilio did not tell Pitman about his past; thus he did not tell her that he had been married before and had a child and grandchildren. He never mentioned petitioner at all. After his brother died in the early 1970's, Attilio told Pitman that he had no living relatives.

Actually, at a much earlier date, Attilio had been married to Gabriella Bevere, who was known as Clara. Petitioner was born of that union in Massachusetts in 1931. After World War II, the family moved to Oakland. In 1952, Attilio and Clara separated, and Clara and petitioner returned to Massachusetts.

There was no contact between petitioner and Attilio from 1952 until the mid-1960's. Around 1965, petitioner's wife, Bianca, contacted Attilio through his brother, Dr. Ralph Della Sala. At that time, petitioner and Bianca had two children; Bianca forwarded their photographs to Attilio. Petitioner and his family received a return letter from Ramona stating that she and Attilio were glad petitioner had married and had children.

In 1968, Attilio and Ramona visited petitioner and his family in Massachusetts. In 1971, Attilio flew to Massachusetts and spent about a week with petitioner and his family. Petitioner and Attilio had no further personal visits after 1971. It appears that neither petitioner nor Attilio made many personal efforts to communicate with each other; however, they remained in contact through correspondence and telephone calls—primarily between Bianca and Ramona—during the ensuing years. They would exchange Christmas cards and packages and, on at least one occasion, Attilio sent checks for petitioner's children. After Ramona suffered a stroke, she stopped sending Christmas cards; but Bianca continued to send cards to Attilio and Ramona on behalf of petitioner and his family. When petitioner's mother died in 1990, Bianca wrote Attilio to inform him.

Attilio executed his last will and testament in December 1989. He bequeathed his entire estate to Ramona or, if she failed to survive him, to defendant Father Flanagan's Boys' Home. Ramona did not survive Attilio and the home became the sole beneficiary under the will.

At trial, petitioner conceded he had no idea why Attilio would have thought him dead. It was petitioner's position that the estate and/or the

beneficiary under the will should bear the burden of proving he was intentionally omitted from the will and that otherwise he should be entitled to the assets of the estate.

Rejecting petitioner's assertion that the estate and/or beneficiary under the will should bear the burden of proof, the trial court found Attilio did not believe petitioner to be dead when the will was executed. Accordingly, judgment was entered rejecting petitioner's claim.

## DISCUSSION

██ Pursuant section 6572, petitioner filed a petition to obtain the entire proceeds of the estate. The petition states: "[Petitioner] is informed and believes and thereon alleges that Decedent failed to provide in his Will for [petitioner] solely because at the time the Will was executed, decedent believed that [petitioner] was dead. As decedent's sole surviving heir, [petitioner's] share of the estate, had the decedent died intestate, would have been 100% of the estate."

Section 6572 (now section 21622) states: "If at the time of execution of the will the testator fails to provide in the will for a living child solely because the testator believes the child to be dead or is unaware of the birth of the child, the child shall receive a share in the estate equal in value to that which the child would have received if the testator had died intestate."[2]

In petitioner's view, the burden of proof regarding "what 'the decedent had in mind'" when executing a will that omits a living child should be borne by the estate or the beneficiary of the will, rather than by the omitted child "who would not have been on the scene to experience all those events which make up the formality of signing one's Last Will and Testament." Accordingly, petitioner contends that, to support distribution under the will, the estate or beneficiary of the will should bear the burden of proving that the decedent was aware of the continued existence of his child and intentionally omitted the child from the will. The trial court disagreed, as do we.

██ "The right to dispose of property in contemplation of death is as old as the right to acquire and possess property, and the laws of all civilized countries recognize and protect this right." (*Estate of Morey* (1905) 147 Cal.

---

[2]As reenacted and renumbered (see fn. 1, *ante*), section 21622 states: "If, at the time of the execution of all of decedent's testamentary instruments effective at the time of decedent's death, the decedent failed to provide for a living child solely because the decedent believed the child to be dead or was unaware of the birth of the child, the child shall receive a share in the estate equal in value to that which the child would have received if the decedent had died without having executed testamentary instruments."

495, 505 [82 P. 57].) It has been said that the right to make a testamentary disposition of property is fundamental, is most solemnly assured by law, and does not depend upon its judicious use. (*Estate of Fritschi* (1963) 60 Cal.2d 367, 373 [33 Cal.Rptr. 264, 384 P.2d 656].) Nevertheless, the testamentary disposition of property is a matter within the plenary control of the Legislature. (*Kizer* v. *Hanna* (1989) 48 Cal.3d 1, 10 [255 Cal.Rptr. 412, 767 P.2d 679].) And the right has been restricted by legislative and social controls. (*Estate of Fritschi, supra*, at p. 373.)

■ It has been declared both legislatively and judicially that the paramount concern in the construction of wills is to ascertain and give effect to the intent of the testator, as far as possible. (§ 21102; *Newman* v. *Wells Fargo Bank* (1996) 14 Cal.4th 126, 134 [59 Cal.Rptr.2d 2, 926 P.2d 969].) Although testamentary intent is not always easy to ascertain (*Estate of Joslyn* (1995) 38 Cal.App.4th 1428, 1433 [45 Cal.Rptr.2d 616]), there is a strong assumption that a parent would not wish to inadvertently or mistakenly disinherit his or her progeny. (See Evans, *Should Pretermitted Issue Be Entitled to Inherit?* (1943) 31 Cal.L.Rev. 263, 265.) In our omitted children statutes, the Legislature has attempted to balance the possibility of inadvertent disinheritance against the freedom of testamentary disposition of property with respect to the paramount concern of carrying out the testator's intent.[3]

Most of the authorities upon which petitioner relies involved the former omitted child statute, section 90, which was enacted upon codification of the Probate Code in 1931. (Stats. 1931, ch. 281, p. 592.) Former section 90 provided: "When a testator omits to provide in his will for any of his children, or for the issue of any deceased child, whether born before or after the making of the will or before or after the death of the testator, and such child or issue are unprovided for by any settlement, and have not had an equal proportion of the testator's property bestowed on them by way of advancement, unless it appears from the will that such omission was intentional, such child or such issue succeeds to the same share in the estate of the testator as if he had died intestate."

This broadly worded statute made no distinction between children with respect to their time of birth or the testator's awareness of their existence, and required affirmative indications in the will of an intent to disinherit.

---

[3]Contrary to petitioner's suggestion, we are not here concerned with an alleged public policy against disinheritance of children. The potential need for support of a dependent child is provided for in the Probate Code, and such a child may be eligible to receive or share in such things as exempt property, a probate homestead, and a family allowance after a parent's death without regard to testamentary disposition. (See former §§ 6510-6511, 6520-6527, 6540-6545.) Nothing in the former omitted child statutes precludes a parent from otherwise disinheriting a child.

Over the years, section 90 proved difficult and inconsistent in application and came under criticism. In 1943, Professor Evans, who served as a draftsman for the Probate Code, asserted that the statute did at least as much harm as good and suggested that, if the statute serves to frustrate the testator's wishes, it should be repealed. (Evans, *Should Pretermitted Issue Be Entitled to Inherit?, supra*, 31 Cal.L.Rev. at p. 269.) Similar criticism was iterated in Niles, *Probate Reform in California* (1979) 31 Hastings L.J. 185, 197, in suggesting that a statutory scheme based upon Uniform Probate Code section 2-302, which distinguishes between after born or adopted children and children living when a will is executed, would be preferable.

The Legislature took notice of these criticisms and enacted sections 6570 to 6572, which are based upon Uniform Probate Code section 2-302.[4] With respect to the statutory treatment of a living child under section 6572, the Law Revision Commission explained: "When the omission is not based upon such a mistaken belief, it is more likely than not that the omission was intentional." (20 Cal. Law Revision Com. Rep. (Dec. 1990) p. 1485.)

Petitioner nevertheless would have us return to the standard applicable under former section 90, by requiring a proponent of the will to prove that, at the time of executing his will, the testator had his living child in mind and intentionally disinherited him. (See *Estate of Leonetti* (1981) 115 Cal.App.3d 378, 382 [171 Cal.Rptr. 303].) This we may not do. We must presume that, by repealing section 90 and replacing it with the current statutory scheme, the Legislature intended to change the law. (*Williams* v. *Garcetti* (1993) 5 Cal.4th 561, 568 [20 Cal.Rptr.2d 341, 853 P.2d 507]; *Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 231 [273 P.2d 5].) The legislative history we have recounted confirms an intent to change the law.

Absent constitutional infirmity, and petitioner suggests none, the appropriate standard is a matter within the prerogative of the Legislature and we may not reject the standard it has adopted. (*Kizer* v. *Hanna, supra*, 48 Cal.3d at p. 10.) Accordingly, we may not impose additional limitations upon Attilio's testamentary disposition of his property and must uphold that disposition unless it appears the sole reason he did not provide for petitioner was a mistaken belief he was dead.

We cannot agree with petitioner that the estate and beneficiary should bear the burden of proving whether Attilio believed petitioner to be dead. Issues

---

[4]Former sections 6570 and 6571 are concerned with children who are born or adopted after the execution of a will. (See now § 21620 et seq.) Such a child is entitled to an intestate share unless an intention not to provide for the child appears from the will, the testator had one or more children and devised substantially all the estate to the other parent of the child, or the testator provided for the child by transfer outside the will and it is shown that the transfer was in lieu of testamentary provision.

of fact in probate proceedings are to be tried in conformity with the rules of practice in civil actions. (§ 1000.) A party in a civil action has the burden of proof as to each fact essential to his claim for relief. (Evid. Code, § 500.) In the probate of Attilio's estate, the paramount concern must be to ascertain and effectuate Attilio's intent. (§ 21102.) Attilio's will expresses an unambiguous intent that his estate is to be distributed to Father Flanagan's Boys' Home. Petitioner desires to override that expressed intent and to obtain a distribution contrary thereto. It is petitioner who must bear the burden of proving all facts essential to such a distribution. (See *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1345 [63 Cal.Rptr.2d 562]; *In re Marriage of Iverson* (1992) 11 Cal.App.4th 1495, 1502 [15 Cal.Rptr.2d 70].)

Petitioner's attempt to shift the burden of proof would, essentially, create a presumption that a testator who fails to provide for a child must believe the child to be dead. However, the Legislature has not seen fit to establish such a presumption and did not otherwise provide for a shift in the burden of proof. Instead, the Legislature recognized that usually a failure to provide for a living child is intentional and concluded that such an intent should be upheld in the usual case. To shift the burden of proof as petitioner suggests would frustrate the intent of the Legislature and, in most cases, the intent of the testator. We perceive no reasons of policy to shift the burden of proof in the absence of legislative direction and accordingly reject petitioner's contention.

We also reject petitioner's assertions that Alma Pitman's testimony regarding Attilio's comment about having no living relatives is uncontradicted evidence of Attilio's state of mind when he executed the will, i.e., he believed petitioner was dead, and that "there is no evidence in the record" to support the trial court's finding to the contrary.

Although Attilio and petitioner had a distant relationship, both geographically and emotionally, they maintained continuous, if infrequent, contact after 1965. When Attilio executed his will in 1989, petitioner was 58 years old, well short of a normal life expectancy. There was no evidence Attilio had received word, accurate or not, of an illness, accident, or other event that might have ended petitioner's life. Petitioner conceded he had no reason to believe Attilio might have thought him to be dead.

It is true that, after his last brother died, Attilio told Pitman he had no living relatives. According to Pitman, "it was probably in the early '70s" that Attilio first made this statement. Thereafter, he repeated it "numerous times," including "after Ramona died" in 1993. Yet, Attilio visited petitioner in 1971 and then maintained contact with petitioner and his family, primarily

through correspondence between petitioner's wife Bianca and Ramona, until Ramona's stroke in the "[l]ate '80s, middle '80s."

Thus, long after initially leading Pitman to believe he had no living relatives, and while continuing to make that claim, Attilio had contact with petitioner and even sent presents to the grandchildren. Together with the fact that Attilio never mentioned he had a son and grandchildren, living or dead, this evidence leads to a reasonable inference that Attilio chose, for whatever reason, to keep his past secret, but knew petitioner was alive when Attilio omitted him from the will in 1989. Accordingly, the trial court properly concluded that petitioner was not entitled to the estate.

#### DISPOSITION

The judgment is affirmed.

Davis, J., and Hull, J., concurred.