Filed 8/3/20

# CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KIMBERLY RALLO et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> VIRGINIA O'BRIAN, <br> as Trustee, etc., <br><br> Defendant and Respondent. | B290526 <br><br> Los Angeles County <br> Super. Ct. No. <br> 17STPB08014 |

APPEALS from judgments of dismissal of the Superior Court of Los Angeles County. Elizabeth A. Lippitt, Judge. Affirmed.

Hunter Salcido & Toms and Robert L. Toms, Jr., for Plaintiff and Appellant Kimberly Rallo.

Law Offices of Jon Udewitz, Jonathan J. Udewitz; Jeff Lewis Law, Jeffrey Lewis and Sean C. Rotstan for Plaintiff and Appellant Adam Ross.

---

[*] Under California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts 1, 4, 5, and 6 of the Discussion.

Loeb & Loeb, Gabrielle A. Vidal and Anita P. Wu for Defendant and Respondent.

---

**INTRODUCTION**

" 'The right to dispose of property in contemplation of death is as old as the right to acquire and possess property, and the laws of all civilized countries recognize and protect this right.' " (*Estate of Della Sala* (1999) 73 Cal.App.4th 463, 467 (*Della Sala*).)  This appeal stems from judgments entered after the trial court sustained demurrers without leave to amend to two probate petitions filed by Kimberly Rallo and Adam Ross —adult children of the decedent Hugh O'Brian.  At issue is O'Brian's right to choose to disinherit anyone claiming to be his heir after his death.  Kimberly and Adam each claim a right to O'Brian's assets under Probate Code section 21622 as children he omitted from his trust solely because he was unaware of their births.[1]  Because we conclude the petitions do not allege facts sufficient to state a cause of action, nor can they be amended to do so, we affirm the judgments.

**FACTS AND PROCEDURAL BACKGROUND**

Hugh O'Brian, an actor best known for his role as Wyatt Earp in a popular 1950s television series, died on September 5, 2016.  He established the Hugh O'Brian Trust in January 1992.  In June 2006, O'Brian entered his only marriage with his long-time girlfriend Virginia Barber, now Virginia O'Brian.  He was

---

[1]     We refer to appellants, as the trial court did, by their first names to avoid confusion.  We intend no disrespect in doing so.  Undesignated statutory references are to the Probate Code.

2

81. O'Brian executed his Third Amendment to and Restatement of the Hugh O'Brian Trust in July 2009, and his Fourth Amendment to the Hugh O'Brian Trust in January 2011. We refer to these documents, collectively, as the "Trust." Virginia O'Brian is O'Brian's surviving spouse and trustee of the Trust (trustee).

After O'Brian's death, Adam, James Venverloh, Donald Etkes, and Kimberly brought claims in the Superior Court, seeking to receive an intestate share of O'Brian's estate as his unintentionally omitted children under section 21622. The trustee demurred to both Kimberly's petition and Adam's and Venverloh's jointly-filed petition on the ground they failed to state a claim for relief. The trial court sustained the demurrers as to Kimberly and Adam with leave to amend.[2] Kimberly filed a supplement to her "Petition to Establish Distribution Rights of Omitted Child," and Adam filed a "Second Amended Petition to Establish Omitted Child's Distribution Rights and Manner of Satisfying His Share."

Consistent with the applicable standard of review, we draw our statement of facts from the amended pleadings and matters properly subject to judicial notice.[3] (*Blank v. Kirwan* (1985)

---

[2]     Etkes did not pursue his claim. The trial court sustained the demurrer as to Venverloh without leave to amend. He did not appeal.

[3]     Kimberly's petition quotes provisions of the Trust, and she attached the referenced Third Amendment/Restatement and Fourth Amendment to her petition. The trustee submitted a complete copy of the operative Trust instruments signed by O'Brian that contain additional language in Article Two omitted

3

39 Cal.3d 311, 318 (*Blank*); *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 240.) We treat as true " 'all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank*, at p. 318.)

1.    ***The Trust***

The Trust allocates specific dollar amounts to about 20 or so of O'Brian's named friends and family members, including Virginia and O'Brian's brother, sister-in-law, and nieces and nephews, and individuals who worked for him, as well as to the Motion Picture and Television Fund.  Upon Virginia's death, the residue of the Trust assets are to be allocated to the O'Brian Charitable Foundation.

In Article Two of the Trust, entitled "Declarations Regarding Family," O'Brian declares, "I have no children, living or deceased. [¶] I am intentionally not providing for HUGH DONALD ETKES (also known as HUGH DONALD KRAMPE), ADINA ETKES, JAMES E. VENVERLOH, BETTY DEAN, any of their descendants, and any other person who claims to be a descendant or heir of mine under any circumstances and without regard to the nature of any evidence which may indicate status as a descendant or heir."[4]

from Kimberly's version of the Trust.  The trial court took judicial notice of the Trust documents submitted by the trustee as the complete Trust and considered the additional language.

[4]    This second sentence is omitted from the version of the Trust Kimberly attached to her petition.

4

Paragraph 14 of Article 14 of the Trust, entitled "Omitted Heirs," similarly states, "Except as otherwise provided in this Agreement, I have intentionally and with full knowledge omitted to provide for HUGH DONALD ETKES (also known as HUGH DONALD KRAMPE), ADINA ETKES, JAMES E. VENVERLOH, BETTY DEAN, the descendants of any of them, and any of my heirs who may be living at the date of my death."  The Fourth Amendment to the Trust does not change these provisions.

### 2.    *Kimberly*

From about January 1962 to February 1963, O'Brian dated Kimberly's mother, Carol Ann Schaeffer (now Carol Ann Henson).  Schaeffer discovered she was pregnant in February or March 1963.  O'Brian, a film star, was out of the country at the time, so Schaeffer contacted his agent.  The agent gave her money and an address of a doctor in Tijuana and told her to " 'take care of it.' "  Schaeffer did not end the pregnancy and was asked to see a doctor O'Brian knew.

Schaeffer became romantically involved with Raymond Cohen and married him in June 1963 before Kimberly was born. Kimberly was born on August 31, 1963, and O'Brian paid the doctor who delivered her.  Cohen is listed as Kimberly's father on her birth certificate, but O'Brian is her biological father.

Kimberly alleges O'Brian was not aware she was his child at the time he executed the Trust.  The petition alleges Etkes and Venverloh claimed to be O'Brian's sons and he specifically excluded them from the Trust.  "If O'Brian was aware that Rallo was his child or even claimed to be his child at the time of execution of his Trust, he would have specifically mentioned Rallo one way or another," but did not.  Kimberly alleges DNA evidence she submitted to "23andMe" shows she is a first cousin

of O'Brian's niece and nephew and a half-sister of Venverloh, "who claimed to be a son of O'Brian."

The supplement to the petition adds the following allegations: O'Brian failed to provide for Kimberly in his Trust "solely because [he] was unaware of [her birth] at the time he executed the Trust. . . . [He] suffered from cognitive decline in his 80s and at other times."[5] Based on Kimberly's information and belief, O'Brian was diagnosed with Alzheimer's disease "or other significant cognitive mental decline." She alleges O'Brian "completely forgot" about her when he executed his Trust due to "his cognitive impairment and the passage of time." Had O'Brian known Kimberly "as his child had been born at the time he executed his Trust, [he] would have provided for [her]."

Kimberly alleges she is entitled under section 21622 to a share of O'Brian's estate equal to what she would have received as his child had he died intestate.

### 3. *Adam*

Adam's second amended petition alleges he is a biological child of O'Brian. Adam did not know O'Brian was his father during O'Brian's lifetime, and O'Brian "never had any knowledge of Adam." Adam alleges he has not received a full copy of O'Brian's testamentary documents. He alleges that, at the time O'Brian executed those documents, O'Brian "was informed and believed that he had no natural born children nor others that he

---

[5]     Kimberly's initial petition only alleged O'Brian failed to provide for her in his Trust "solely because O'Brian was unaware of the birth of Rallo under section 21622. O'Brian was unaware that Rallo was his child at the time of execution of his testamentary instruments effective at the time of [his] death."

6

adopted. The sole reason that [O'Brian] did not provide for Adam in his testamentary documents is because [he] was unaware of Adam's birth." The petition does not attach the Trust.

Adam alleges he is entitled to his intestate share of O'Brian's estate or the assets held in his trust as an omitted child under section 21622.

### 4. *Demurrers*

The trustee again demurred to Kimberly's supplemented petition on February 6, 2018, and to Adam's second amended petition on February 13, 2018, on the ground they failed to allege facts sufficient to state a legal basis for relief under section 21622. On April 10, 2018, the trial court heard argument on both demurrers and took the matter under submission.[6] On April 16, 2018, the trial court issued its written rulings sustaining the demurrers without leave to amend. The court entered judgments against Kimberly and Adam on May 4, 2018. They separately appealed from the judgments of dismissal.

## DISCUSSION

Kimberly and Adam both contend they alleged sufficient facts to state a claim under section 21622. They argue the Trust's general disinheritance clause does not preclude an unknown child from recovering under section 21622, and they adequately alleged facts showing O'Brian omitted them from his Trust solely because he was unaware of their births. Kimberly

---

[6] A different judicial officer, Judge Elizabeth A. Lippitt, heard and decided this second round of demurrers. Judge Barbara R. Johnson heard and decided the earlier demurrers.

7

also argues she should be able to prove her claim with DNA evidence.

Adam asserts several additional contentions of error. He argues the trial court improperly took judicial notice of the Trust, the Probate Code does not allow for demurrers in response to petitions, the trial court did not describe what he needed to amend or give him an opportunity to cure "any purported defects" after sustaining the trustee's first demurrer with leave to amend, and he sufficiently pleaded a claim under section 248.

1. ***Standards of review***

"On appeal from a judgment after a demurrer is sustained without leave to amend, we assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and facts of which judicial notice can be taken." (*Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1181.) "[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank, supra*, 39 Cal.3d at p. 318.) "[W]e examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) " 'If the complaint fails to plead, or if the defendant negates, any essential element of a particular cause of action, this court should affirm the sustaining of a demurrer.' " (*Consumer Cause, Inc. v. Arkopharma, Inc.* (2003) 106 Cal.App.4th 824, 827.)

When a demurrer is sustained without leave to amend, we also must "decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank, supra*,

8

39 Cal.3d at p. 318.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*) Neither the trial court nor this court will rewrite the complaint. (*Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1153.)

2. *Applicable law*

California's Probate Code provides a statutory right of recovery to children omitted from a decedent's will or trust. (§ 21600 et seq.) Section 21622 states: "If, at the time of the execution of all of decedent's testamentary instruments effective at the time of decedent's death, the decedent failed to provide for a living child *solely because the decedent* believed the child to be dead or *was unaware of the birth of the child*, the child shall receive a share in the estate equal in value to that which the child would have received if the decedent had died without having executed any testamentary instruments."[7]  (Italics added.) A child claiming relief under this section bears "the burden of proof regarding the parent's intent in omitting the child from the will [or trust]." (*Estate of Mowry* (2003) 107 Cal.App.4th 338, 343 (*Mowry*).)

An omitted child born *after* the decedent's execution of his testamentary instruments is treated differently. Under section 21620, such a child "shall receive a share in the decedent's estate equal in value to that which the child would have received if the decedent had died without having executed any testamentary instrument" *unless* the decedent's intent to omit the child is

---

[7]    " '[D]ecedent's testamentary instruments' means the decedent's will or revocable trust." (§ 21601, subd. (a).)

9

demonstrated through the specific circumstances identified in section 21621. Relevant here, the child will not receive a share of the estate if the objecting party establishes, "The decedent's failure to provide for the child in the decedent's testamentary instruments was intentional and that intention appears from the testamentary instruments."[8] (§ 21621, subd. (a).) Thus, an after-born child does not bear the burden of providing the decedent's intent in omitting him or her from a will or trust.

The Probate Code did not always distinguish between omitted children born *before* execution of the testamentary documents and those born *after* execution. Enacted in 1931, former section 90 reflected the state's "prior public policy against unintentional omission of a child from a parent's will." (*Mowry, supra,* 107 Cal.App.4th at p. 341.) That section provided, " 'When a testator omits to provide in his will for any of his children, or for the issue of any deceased child, whether born before or after the making of the will or before or after the death of the testator, and such child or issue are unprovided for by any settlement, and have not had an equal proportion of the testator's property bestowed on them by way of advancement, unless it appears from the will that such omission was intentional, such child or such issue succeeds to the same share in the estate of the testator as if he had died intestate.' " (*Della Sala, supra,* 73 Cal.App.4th

_____

[8] The child also will not recover if the decedent provided "substantially all the estate to the other parent of the omitted child," or the decedent provided for the omitted child "by transfer outside of the estate" and intended the transfer to be in lieu of providing for the child in his or her will or trust. (§ 21621, subds. (b), (c).)

10

at p. 468.)  Former section 90 thus presumed the omission of any child from a will was unintentional (*Mowry, supra*, 107 Cal.App.4th at p. 343), unless the testator's intent to do so appeared in the will, similar to the exception now stated in section 21621.

Section 90 was criticized, however, as "serv[ing] to frustrate the testator's wishes."  (*Della Sala, supra*, 73 Cal.App.4th at p. 469.)  The Legislature repealed section 90 and enacted sections 6570 to 6572—the predecessors to sections 21620 to 21622. (*Della Sala*, at p. 469.)  Those sections are based on section 2-302 of the Uniform Probate Code, which distinguishes between after-born children and children living when a will or trust is executed.[9]  (*Della Sala*, at p. 469.)  After reviewing the legislative history, the court in *Della Sala* concluded the Legislature intended to change the law when it repealed section 90.  (*Della Sala*, at p. 469.)  The court explained, "the Legislature recognized that usually a failure to provide for a living child is intentional and concluded that such an intent should be upheld in the usual case."  (*Id.* at p. 470.)

Accordingly, the enactment of the predecessor to section 21622 changed the statutory treatment of omitted children living at the time the decedent executed his will or trust. (*Mowry, supra*, 107 Cal.App.4th at p. 343; *Della Sala, supra*, 73 Cal.App.4th at p. 469.)  Now, a living child who desires to "override" a parent's testamentary disposition of his property

---

[9]     The Uniform Probate Code's provision allowing an omitted living child to recover applied only to children mistakenly believed to be dead.  The Legislature drafted California's provision to include unknown children as well.

11

to obtain a distribution contrary to it must prove "the sole reason [the parent] did not provide for [the child] was a mistaken belief [the child] was dead [or an unawareness of the child's birth]." (*Della Sala,* at pp. 469-470.) The presumption against unintentional omission remains intact for after-born children, however. They are "entitled to an intestate share *unless* an intention not to provide for the child appears from the will," or other exception under section 21621 is demonstrated. (*Della Sala*, at p. 469, fn. 4, italics added.)[10]

It is undisputed appellants were born *before* O'Brian executed his Trust. Accordingly, they seek a share of O'Brian's estate under section 21622; section 21620 does not apply to them. To survive demurrer, therefore, appellants must allege facts showing "the sole reason" O'Brian did not provide for them was his unawareness of their births.

---

[10] In *Della Sala*, the petitioner contended he was entitled to a share of his father's estate because his father mistakenly believed he was dead at the time he executed his will. (*Della Sala*, *supra,* 73 Cal.App.4th at p. 465.) The appellant argued the estate had the burden of proving his father was aware of his child's "continued existence" and intentionally omitted him from the will. (*Id.* at p. 467.) The court of appeal rejected that contention, finding the Legislature changed the law when it repealed former section 90. (*Della Sala*, at p. 469.) The decedent had told his executor he had no living relatives, but nevertheless visited petitioner and had contact with him after that comment. (*Id.* at pp. 470-471.) The court concluded the petitioner had not proved his father believed he was dead and thus could not recover under the predecessor to section 21622. (*Della Sala*, at p. 471.)

### 3. *The trial court properly interpreted section 21622*

Kimberly and Adam both assert a general disinheritance clause—like the one found in the Trust—cannot defeat a claim under section 21622. They contend a general disinheritance clause may defeat only a claim brought by an unknown child born after the execution of a will or trust under section 21620 because section 21621—which they argue gives effect to general disinheritance clauses—expressly applies only to section 21620 claims.

The principles of statutory construction are well-established. " 'We begin by examining the statutory language, giving the words their usual and ordinary meaning.' " (*Estate of Pryor* (2009) 177 Cal.App.4th 1466, 1471.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.) " '*If there is no ambiguity, then we presume the lawmakers meant what they said*, and the plain meaning of the language governs. [Citations.]' " (*Estate of Pryor*, at p. 1471.)

"[W]hen the language of a statute is clear, we need go no further." (*Switzer v. Wood* (2019) 35 Cal.App.5th 116, 128.) " 'If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' " (*Estate of Pryor*, *supra*, 177 Cal.App.4th at p. 1471.) We also need not "follow the plain meaning of a statute when to do so would frustrate the manifest purpose of the legislation as a whole or otherwise lead to absurd results." (*Switzer*, at p. 129.) However, " '[t]o justify departing

13

from a literal reading of a clearly worded statute, the results produced must be so unreasonable the Legislature could not have intended them.' " (*Ibid.*)

### a. *Section 21622 does not preclude application of a general disinheritance clause*

Appellants argue that by separating former section 90 into three separate sections, the Legislature "limited the application of general disinheritance clauses" to claims brought under section 21620. The plain language of the omitted child statutes, sections 21620-21622, belie appellants' interpretation. True, section 21621 identifies the statutory exceptions to a section 21620 claim. Yet, no statute states that a general disinheritance clause—like that described in section 21621, subdivision (a)— may not act to omit an unknown child born before the decedent executed the will or trust containing the disinheritance clause.

The plain language of section 21621 merely states that an after-born child cannot recover under section 21620 if one of the stated circumstances—including the existence of a general disinheritance clause—is demonstrated. That statute does not state, however, that the circumstances it describes are effective against section 21620 claims alone. Quite the opposite: section 21621 limits an objector's ability to prevent an after-born child from recovering part of an estate under section 21620. In other words, recovery for an omitted after-born child under section 21620 is *mandatory unless* the decedent's intent not to provide for the child in a will or trust is established through one of the three enumerated exceptions.

In contrast, an omitted child's recovery under section 21622 is *conditional*: (1) the decedent must have been unaware of the child's birth (or mistaken about the child's death), and (2) the

14

decedent must have failed to provide for the unknown child *solely* because of that lack of awareness (or mistaken belief). The language is clear. Recovery under section 21622 is available *only if* the child can prove the two conditions to demonstrate the omission was unintentional. In contrast, a child's omission is presumed unintentional under section 21620 unless proof of the testator's intent exists as stated in section 21621. But nothing in the plain language of section 21622 or elsewhere prevents a trustor from expressing his intent to disinherit potential heirs living at the time—even if unknown to the trustor—by including a general disinheritance clause in his trust. And, because there could be any number of ways a decedent could decide not to provide for unknown heirs, including children, there would be no reason for the Legislature to enumerate those reasons in section 21622. The section's lack of reference to section 21621, therefore, does not preclude the application of a general disinheritance clause to an unknown child claiming relief under section 21622 as appellants contend. Rather, it merely shows a general disinheritance clause, or other exception stated in section 21621, is *not required* for an omitted child's claim to fail under section 21622.

   *Mowry* and *Della Sala* support this interpretation. As appellants note, the court in *Mowry* explained that by its terms and placement after section 21620, "section 21621 is meant to apply only when section 21620 is applicable: where a child is born or adopted *after* execution of the testamentary document." (*Mowry, supra*, 107 Cal.App.4th at p. 341.) There, the omitted child was born before her parent signed his will, but nevertheless contended section 21621 applied, *requiring* the testator's intent not to provide for her to appear on the face of his will. (*Mowry*,

at pp. 340-341.) Because section 21620 did not apply, the child bore the burden to prove her parent mistakenly omitted her from his will. She did not, and thus could not recover part of her parent's estate as an omitted child. (*Mowry*, at pp. 343-344.)

The court in *Mowry* did not conclude, however, that a disinheritance clause cannot demonstrate an intent to omit a living child from a will. To the contrary, the court concluded a will need not express the testator's intent to exclude a living child to defeat a claim under section 21622, as is *required* to preclude an after-born child from recovering under section 21620.

Moreover, the court in *Della Sala* acknowledged that, through the omitted children statutes, "the Legislature has attempted to balance the possibility of inadvertent disinheritance against the freedom of testamentary disposition of property with respect to the paramount concern of carrying out the testator's intent." (*Della Sala, supra*, 73 Cal.App.4th at p. 468 & fn. 3 [noting the court was not addressing the "alleged public policy against disinheritance of children," as the Probate Code elsewhere provides for the support of dependent children upon a parent's death "without regard to testamentary disposition"].) The court recognized, however, "the paramount concern in the construction of wills is to ascertain and give effect to the intent of the testator, as far as possible." (*Id*. at p. 468.)

It does not logically follow—as appellants assert—that a will or trust actually expressing the decedent's intent to exclude a living child—known or unknown—cannot apply to defeat an omitted child's claim under section 21622. The existence of a general disinheritance clause bears on the testator's or trustor's *intent*. If the decedent's testamentary documents show his intent to exclude potential children, even those whose identities are

16

unknown to him, then the decedent did *not* fail to provide for an unknown child *solely* because he was unaware of the child's birth.

It would be absurd to read section 21622 as requiring a court to uphold a decedent's intended testamentary disposition unless the omitted child can show the sole reason the decedent did not provide for the child was his unawareness of the child's birth (*Della Sala, supra*, 73 Cal.App.4th at p. 469), but to *ignore* a provision in the decedent's will or trust expressing his intent not to provide for any children about whom he was unaware.

In short, the trial court did not err in considering the Trust's disinheritance provisions to assess whether appellants could state facts showing they were entitled to relief under section 21622.[11]

---

[11] Appellants also contend a general disinheritance clause cannot apply to unknown living children because the testator's mistake as to an unknown child or child thought to be dead cannot appear on the face of a will or trust. Nothing in the statutory language indicates that, by including unknown children and children mistakenly thought dead under section 21622, the Legislature intended to prevent a general disinheritance clause from taking effect to exclude living children who may not become known until after a testator's death. To the contrary, if the face of the trust or will shows a reason why the testator intended not to provide for a general class of heirs or children about whom he was unaware, then by the express language of section 21622 the unknown child could not recover. Nothing requires the testator to name the unknown child—and of course he could not.

17

b.   *Section 21622 requires appellants to plead facts showing O'Brian was unaware of their existence and his unawareness was the sole reason for omitting them from the Trust*

Adam contends the distribution right under section 21622 for an unknown child born before the execution of a testamentary document "exists irrespective of the decedent's intentions." He asserts section 21622 "carves out a distribution right for . . . unknown children solely because they are unknown." Adam thus contends the statute requires only that he allege he was unknown to O'Brian, not that O'Brian would have treated him differently had he been aware of him. We cannot agree.

The statute unambiguously carves out a distribution right for unknown children *only if* they can prove the *only reason* the decedent did not provide for them was because he did not know they existed.[12] Stated another way, to recover under section 21622, the omitted child must show the decedent would have provided for him but for the fact that the decedent was unaware of the child's existence when he executed his will or trust.

Adam "has the burden of proof as to each fact essential to his claim for relief." (*Della Sala, supra*, 73 Cal.App.4th at p. 470.) As we have discussed, unlike after-born children, the law does not presume living children like appellants were unintentionally omitted because they were unknown. Appellants'

_____

[12]   As the trustee notes, "solely" is defined as "to the exclusion of all else" and "singly." Synonyms include "exclusively" and "only." (Merriam-Webster.com Dict. <http://www.merriam-webster.com/dictionary/solely> [as of July 30, 2020], archived at <https://perma.cc/29P5-MKRG>.)

18

burden of proof, therefore, includes "[O'Brian's] intent in omitting [them] from the will [or trust]." (*Mowry, supra*, 107 Cal.App.4th at p. 343.) Adam cannot simply plead O'Brian was unaware of his birth to demonstrate O'Brian mistakenly omitted him from the Trust, as Adam contends. Rather, as noted, the statute, and authority interpreting it, clearly require the omitted child to prove the decedent's only reason for failing to provide for the child was his unawareness of the child or mistake as to his death —not the decedent's unawareness or mistake alone. Thus, as the trial court correctly found, to obtain a distribution of the Trust assets contrary to its express terms under section 21622, appellants must plead and prove facts demonstrating "the sole reason" O'Brian did not provide for them in his Trust was his unawareness of their births. (*Della Sala, supra*, 73 Cal.App.4th at p. 469.)

4. ***The amended petitions do not allege facts sufficient to state a claim for relief under section 21622***

    a. *The Trust's disinheritance provisions apply to appellants*

The trial court found appellants' amended pleadings failed to allege facts indicating—or from which the court could conclude —O'Brian's only reason for not providing for them in his Trust was his unawareness of their births. As we discuss below, the court properly took judicial notice of the Trust and considered its terms, some of which were included or referred to in the petitions, in ruling on the demurrers.

First, the court rejected Adam's argument that the applicable Trust provisions were ambiguous because the Trust provided specific gifts to specific relatives of O'Brian while also "excluding any 'heirs.' " We agree with the trial court.

19

As the court noted, in Article Two of the Trust, O'Brian stated he was "intentionally not providing for" any person "who *claims* to be [his] descendant or heir," and Article 14 expressly conditions O'Brian's intentional omission of "any of [his] heirs who may be living at the date of [his] death" on the phrase, "[*e*]*xcept as otherwise provided* in this Agreement." (Italics added.) These two provisions are consistent with the specific gifts O'Brian made to designated relatives. The trust already provides for them, and they already have been deemed—rather than claim to be—heirs or descendants.

Moreover, we concur with the trial court's reasoning that the Trust's omission of those claiming to be an heir, "*under any circumstances and without regard to the nature of any evidence which may indicate status as a descendent or heir*" (italics added) and of "heirs who may be living at the date of [O'Brian's] death" unambiguously reflects O'Brian's intent "to disinherit any heir not provided for, even those he was not aware of." (See, e.g., *Estate of Katleman* (1993) 13 Cal.App.4th 51, 60 (*Katleman*) ["If a testator expresses an intent to disinherit his or her 'heirs,' 'legal heirs,' 'relatives' and the like, such language is generally found sufficient to disinherit a child who was alive at the time the will was executed or a surviving spouse who was then married to the testator."].)[13]

---

[13] Similar language has been held insufficient to demonstrate a testator's intent to disinherit a subsequently acquired spouse or after-born child. (*Katleman, supra*, 13 Cal.App.4th at p. 60 ["A person who was not then an heir or legal heir, and whose subsequent relationship was not yet known or contemplated, could not then have been considered by the testator to be such."]; see also *Mowry, supra*, 107 Cal.App.4th at pp. 343-344

Appellants nevertheless contend they cannot be excluded under the Trust because they are not named in the disinheritance clause as are the individuals who allegedly claimed to be O'Brian's children while O'Brian was alive. But, had O'Brian intended to limit the disinheritance clauses to those he specifically named, he would not have included the language "any other person who claims to be a descendant or heir" or "any of my heirs" in those provisions. As alleged children about whom O'Brian was unaware, Kimberly and Adam clearly fall into those

---

[explaining this statement in *Katleman* "is consistent with our current statutes involving omitted children who are born or adopted *after* execution of the testamentary document"].) The court in *Katleman* explained the above language was "broad enough to include a *present* spouse, [but] such terms are not sufficient to show an intent to disinherit a subsequently acquired spouse, unless the will's language clearly demonstrates that the testator contemplated the possibility of a later marriage." (*Katleman*, at p. 60.) The court noted, "a disinheritance clause which excluded 'any person who may, after the date of this will, become my heir or heirs *by reason of marriage* or otherwise' was found adequate to overcome the pretermission rights of the testator's subsequently acquired spouse." (*Ibid.*) Here, as children born *before* O'Brian executed his Trust, appellants allegedly already were his heirs. But, even if O'Brian did not consider them his heirs because he was unaware of their existence, as appellants argue, the Trust's exclusion of any person claiming to be an heir and any heir who may be alive at O'Brian's death is sufficiently broad to include potential heirs O'Brian was unaware of at the time.

expressed categories of individuals O'Brian intended to omit from his Trust.[14]

This is so even if O'Brian was mistaken when he declared he had no children. As the trial court concluded, O'Brian's declaration that he has "no children, living or deceased" did not change the Trust's intent to disinherit unprovided for known or unknown heirs, like Kimberly and Adam. As the court explained, "[s]imply put, the language of the Trust would clearly not provide for a person in Adam's [or Kimberly's] circumstances as pled *regardless* of whether [O'Brian] was aware of [their] birth[s] at all."

Accordingly, we conclude the court did not err in finding the disinheritance provisions in the Trust applied to omit Kimberly and Adam, as alleged unknown children of O'Brian.

     b.     *Appellants failed to allege facts showing O'Brian would not have excluded them had he been aware of their existence*

The trial court also correctly concluded appellants did not allege facts demonstrating O'Brian would not have disinherited them had he been aware of their births. As the trial court noted, appellants were not required to allege *how* O'Brian would have provided for them. But, in light of the Trust's disinheritance clauses, to show O'Brian excluded appellants solely because he was unaware of their births, appellants had to allege facts

---

[14] The term "heirs" includes children. (See § 44 [" 'Heir' means any person . . . who is entitled to take property of the decedent by intestate succession under this code."].) We thus also reject Adam's contention the Trust's inclusion of separate definitions for "heirs" and "children" creates ambiguity.

22

indicating O'Brian would not have included the general disinheritance clause had he been aware of their births or—as the trial court put it—"other like situations leading to the conclusion that [O'Brian] did not provide for [appellants] 'solely because' of his unawareness of [their] birth[s]." They did not.

Kimberly supplemented her petition to allege O'Brian was unaware of her birth at the time he executed his Trust because he "completely forgot about" her due to the passage of time or his cognitive impairment. She also added that, had O'Brian "actually known" she was "his child [and] had been born at the time he executed his Trust, O'Brian would have provided for [her]. O'Brian provided for his brother, sister-in-law, and nieces and nephews." Kimberly's supplemented petition also alleges "O'Brian failed to provide for [her] in his Trust" and in any applicable will, "solely because O'Brian was unaware of the birth of [Kimberly] at the time he executed the Trust" and "was unaware that [she] was his child at the time of execution of his Trust." She alleges O'Brian "thought that he was without linear issue," when he executed his Trust. The supplement also states O'Brian intentionally omitted to provide for Etkes and Venverloh in the Trust, "who claimed to be sons of O'Brian," but the Trust does not mention Kimberly.

Adam in turn generally alleges O'Brian believed he had no children at the time he executed the Trust. He alleges O'Brian had no knowledge of him, and he did not know O'Brian was his father until after O'Brian died. Adam amended his petition to allege, "The sole reason that [O'Brian] did not provide for [him] in his testamentary documents is because [O'Brian] was unaware of Adam's birth."

23

None of these facts demonstrates or leads to a conclusion that O'Brian would have constructed his Trust differently to provide for Kimberly or Adam had he known they existed at the time he executed the Trust. If anything, the fact that O'Brian specifically disinherited two individuals—Venverloh and Etkes— whom he was aware claimed to be his sons, supports the opposite conclusion: that O'Brian also would not have provided for Kimberly (or Adam) had he been aware of her existence at the time. Indeed, in Kimberly's initial petition, she alleged she is Venverloh's half-sister. Nothing in Kimberly's petition suggests O'Brian would have provided for her when he did not provide for her alleged half-brother.

Similarly, the earlier petition Adam and Venverloh jointly filed alleges Venverloh is O'Brian's biological son, Venverloh informed O'Brian that he was his son, and O'Brian denied parentage and told Venverloh that he "had nothing to gain from establishing contact with [Venverloh.]" Again, O'Brian's specific exclusion of Venverloh from his Trust after allegedly being informed of his birth suggests O'Brian would have treated Adam similarly. It certainly does not support a conclusion that, had O'Brian been aware of Adam's birth, he would have reacted differently and provided for Adam. (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 12 ["The general rule . . . is that material factual allegations in a verified pleading that are omitted in a subsequent amended pleading without adequate explanation will be considered by the court in ruling on a demurrer to the later pleading."].)[15]

_____

[15] Indeed, Adam's earlier petition alleges his "ability to be included or excluded from [O'Brian's] testamentary instruments

24

Nor does O'Brian's provision for certain relatives in his Trust—his brother, sister-in-law, nieces and nephews—indicate O'Brian would have provided for children with whom he had no relationship had he been aware of their existence at the time he executed his Trust when he was over 80 years old.

We also conclude Kimberly and Adam did not cure their defective pleadings by conclusorily alleging O'Brian failed to provide for them solely because he was unaware of their existence. Repeating the statutory requirements does not provide a factual basis for those requirements, particularly when one of them—O'Brian's intent—is negated by the Trust's disinheritance provisions. Moreover, as the trustee notes, as a "general rule . . . statutory causes of action must be pleaded with particularity." (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 790.) Adam contends his allegations repeating the requirements for relief under section 21622 are sufficient because they inform the trustee of the basis for his claims. He argues the trustee has

---

will never be known" because O'Brian believed that he had no children at the time. The petition continues, "Had [O'Brian] been aware of Adam's birth, [O'Brian] could have specifically disinherited Adam knowing Adam was indeed [O'Brian's] son. Or [O'Brian] could have given Adam a gift, as [O'Brian] did provide for those persons that [O'Brian] mistakenly thought were his next of kin (believing that he had no children), namely [O'Brian's] siblings and their issue." These allegations essentially admit Adam can allege no facts to show O'Brian excluded Adam from his Trust only because he was unaware of him. We need not consider these allegations, however, to conclude the trial court ruled correctly.

superior knowledge of the facts, and he "has no way of providing . . . detailed information except through discovery."

Adam's lack of knowledge does not excuse his failure— or Kimberly's—to allege facts supporting his conclusions of law. As the trustee asserts, the trial court did not sustain the demurrers on the ground the petition's allegations were uncertain or vague, but because they alleged no factual basis for the assertion O'Brian's unawareness of appellants' existence was the sole reason he did not provide for Adam or Kimberly. (See *Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 615-620 [reversing order sustaining demurrer on ground allegations as to nature and duration of oral agreement were uncertain, acknowledging oral contract "may be pleaded generally as to its effect," but affirming sustaining of demurrer on other tort causes of action for failure to allege a factual basis for the claims beyond generally pleading their elements].)

To overcome the trustee's demurrers, appellants had to do more than conclusorily allege O'Brian failed to provide for them solely because he was unaware of their births when he executed his Trust. "[S]imply parroting the language of [the statute] in the [petition] is insufficient to state a cause of action." (*Hawkins v. TACA Internat. Airlines, S.A.* (2014) 223 Cal.App.4th 466, 470- 471, 474-476, 478 [rejecting plaintiff's contention she need not allege specific facts to state a cause of action against airlines for entering into underfunded contracts in violation of statute when she had not seen the contracts].)

**5.      *Appellants were not entitled to leave to amend again***

After sustaining the trustee's first demurrers, the trial court gave appellants an opportunity to amend their petitions to allege facts demonstrating O'Brian excluded them from his Trust

for no other reason than his unawareness of their existence. They failed to do so.  Nor have appellants indicated how they reasonably might allege a factual basis demonstrating they are entitled to relief under section 21622 in the face of the Trust's disinheritance provisions.  Given the Trust's terms and appellants' inability to allege any facts indicating O'Brian would not have failed to provide for them in the Trust had he been aware of their births, we conclude appellants are not reasonably likely to amend their petitions successfully if given another opportunity to do so.  Accordingly, the trial court did not abuse its discretion when it sustained the demurrers without leave to amend.[16]  (*Blank, supra*, 39 Cal.3d at p. 318.)

**6.      *Adam's additional contentions***

　　a.      *Judicial notice of the Trust was proper*

Adam contends the trial court prejudicially erred in taking judicial notice of the Trust's terms.[17]  "[A] demurrer may be sustained where judicially noticeable facts render the pleading defective." (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751 (*Scott*).)  Moreover, " '[w]here written documents are the foundation of an action and are attached to the complaint and incorporated therein by reference, they become

---

[16]      Because we affirm the judgment against Kimberly, we need not consider her contention that she should be allowed to present DNA evidence to prove she is O'Brian's child.  Moreover, in ruling on the demurrer, the court assumed the truth of Kimberly's allegation that O'Brian was her father.

[17]      On appeal, Kimberly does not contest the trial court's consideration of the Trust.

27

part of the complaint and may be considered on demurrer.' " (*Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London* (2008) 161 Cal.App.4th 184, 191.)  "Additionally, judicial notice of matters upon demurrer will be dispositive in those instances where there is not or cannot be a factual dispute concerning that which is sought to be judicially noticed." (*Bridgeman v. Allen* (2013) 219 Cal.App.4th 288, 293, fn. 1.)  We review the trial court's decision to take judicial notice for abuse of discretion. (*In re Social Services Payment Cases* (2008) 166 Cal.App.4th 1249, 1271.)

The court did not abuse its discretion by considering the Trust, and its terms, filed by the trustee.  Without the Trust, appellants would have no claim under section 21622.  Kimberly's petition quoted from the Trust and attached a version of it. Adam did not attach a copy of the Trust to any of his petitions. Nevertheless, his operative petition refers to the Trust, O'Brian's failure to provide for him in the Trust, and O'Brian's belief that he did not have any children at the time he executed the Trust. Adam also describes specific property held by the Trust. Moreover, in his superseded petition, Adam admitted O'Brian "included a disinheritance clause in [h]is testamentary documents" and refers to O'Brian's "intention to disinherit his 'heirs' or 'legal heirs.' "  That version of Adam's petition also refers to O'Brian's provision for other relatives in the Trust and the specific exclusion of Venverloh from it.

As Adam refers to and relies on the Trust and its terms in his previous and operative petitions, it was appropriate for the court to take judicial notice of it.  (See *Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 956, fn. 6 [on demurrer, court able to take judicial notice of settlement agreement referred

28

to in complaint]; *Estate of Cooper* (1983) 142 Cal.App.3d 118, 122 [finding court's consideration of probated will and codicil did not "improperly look[ ] beyond the face of the petition" and were subject to judicial notice]; see also *Shoemaker v. Myers, supra*, 52 Cal.3d at p. 12 [earlier omitted allegations will be considered in ruling on a demurrer to a later pleading].)

Moreover, "where judicial notice is requested of a *legally operative* document—like a contract—the court may take judicial notice not only of the fact of the document . . ., but also facts that clearly derive from its *legal effect*." (*Scott, supra*, 214 Cal.App.4th at p. 754.) In other words, the court may take judicial notice of a " 'document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity.' " (*Id.* at p. 755; see also Evid. Code, § 452, subd. (h) [court may take judicial notice of facts "not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"].)

Here, no one disputes the Trust's authenticity. The attorney who drafted the Trust authenticated the documents he attached as the operative Trust in effect at the time of O'Brian's death. The Trust also has been part of the court file since December 2017. (Evid. Code, § 452, subd. (d) [court may take judicial notice of court records].) Adam *concedes* he does not dispute the existence or authenticity of the Trust.[18] Really,

---

[18] Nor did Adam contend O'Brian did not execute the Trust, or that it otherwise was inauthentic, in response to the demurrer. He merely stated the Trust, and declarations attaching it, were "not documents or facts within documents that [he] has admitted [are] not in dispute."

29

Adam disagrees with the court's interpretation of the Trust terms. He contends that, because he disputes the meaning of the Trust terms, the trial court erred in taking judicial notice of them.

When a court takes judicial notice of a document on demurrer, it does not "accept[ ] a particular interpretation of its meaning," when the meaning is in dispute. (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 113 (*Fremont*); *StorMedia, Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9.) Contrary to Adam's contention, the trial court did not take judicial notice of the meaning or a particular interpretation of the Trust terms. The court considered the terms as stated in the Trust and independently determined whether they precluded appellants from recovering under section 21622 as a matter of law. Nor did the court improperly consider the trustee's and O'Brian's attorneys' declarations, as Adam argues. No facts asserted in those declarations were contested. The declarants did not purport to opine on the meaning of the Trust terms. O'Brian's attorney simply authenticated the Trust documents as true copies of those executed by O'Brian and in effect at the time of his death. The trustee's attorney in turn introduced and authenticated the former declaration.

And, as noted, the Trust terms are not ambiguous or in conflict with each other. Accordingly, the trial court did not abuse its discretion by taking judicial notice of the Trust and considering its terms.[19]

_____

[19] Although the trustee did not officially request judicial notice of the Trust, as Adam notes, the trial court was permitted to take judicial notice of the Trust on its own motion. (*Scott,*

b.      *The court was authorized to consider the demurrers*

We also reject Adam's contention the court may not consider a demurrer to a probate petition. As Adam acknowledges, the Code of Civil Procedure applies to probate proceedings, "[e]xcept to the extent that [the Probate] code provides applicable rules." (§ 1000, subd. (a).) Section 1043 allows an interested party to object to a probate petition. As the trial court said, a demurrer is a form of objection. (See Code Civ. Proc., § 430.10 [party "may object, by demurrer or answer," to a complaint filed against it].) The Probate Code does not preclude filing a demurrer to object to a petition's failure to state a cause of action. And, as the trial court noted, demurrers routinely are considered in probate proceedings. (See, e.g., *Estate of Pryor, supra*, 177 Cal.App.4th at pp. 1468, 1470 [considering order sustaining demurrer to petition that claimed a donative transfer was improper]; *Johnson v. Kotyck* (1999) 76 Cal.App.4th 83, 86,

_____

*supra*, 214 Cal.App.4th at p. 752 [judicial notice proper on demurrer despite lack of formal request because "the court may take judicial notice on its own volition," and plaintiff had opportunity to object]; Evid. Code, § 455, subd. (a).) We reject Adam's contention he had no opportunity to object. He did. The trustee first submitted the authenticated Trust with its initial demurrers to Kimberly's and Adam's petitions in December 2017 —almost two months before Adam filed his second amended petition. Adam objected to the court's consideration of the Trust's terms in his response to *both* demurrers in January and March 2018. Indeed, in his response to the second demurrer, Adam specifically argued the court should not take judicial notice of the Trust or its terms or the declarations authenticating the documents.

31

91 [affirming judgment after dismissal of petition for accounting following order sustaining demurrer]; *Estate of Cooper*, *supra*, 142 Cal.App.3d at pp. 120-121 [affirming judgment after order sustaining demurrer to spouse's petition to recover share of estate where decedent's will expressed intent not to provide for her].)  Nor has Adam cited any authority holding a probate court may not consider a demurrer.

> c.   *The trial court did not prejudicially err when it did not tell Adam how to amend his petition*

For the first time on appeal, Adam contends the trial court did not state the specific grounds on which it sustained the trustee's first demurrer with leave to amend in time for Adam to cure the defect.  We need not consider objections not made in the trial court.  (*Cabrini Villas Homeowners Assn. v. Haghverdian* (2003) 111 Cal.App.4th 683, 693 [" 'An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below.' "].)  Nevertheless, Adam has not demonstrated prejudicial error.

Adam contends the trial court would not tell him how to amend his complaint and did not state its ground for sustaining the demurrer until it issued a Nunc Pro Tunc Order on January 30, 2018, that Adam did not receive until after he filed his second amended petition.  Although the court's initial minute order, filed January 18, 2018, did not state the ground on which the court sustained the demurrer, at the hearing the court made

32

clear the ground for its ruling was the petition's failure to state facts sufficient to state a claim for relief under section 21622.[20]

The court explained, "if the petitioner can successfully plead entitlement under 21622, then . . . he can state a claim. [¶] I don't believe that [Venverloh] can state a cause of action because he was specifically excluded in the trust, and so, therefore, I am denying . . . his petition without leave to amend. [¶] As to . . . Adam, he has pleaded that . . . the Decedent[ ] had no knowledge of him . . . . He may state a claim. And I am sustaining his petition with leave to amend." When Adam's attorney asked the court what needed to be amended, the court explained, "If [Adam] can form his pleading to include himself in [section] 21622 . . . . I can't tell you what's missing. But I can tell you that there is room for amendment since it is to be liberally construed."

Moreover, Adam has not demonstrated prejudice. The trustee's only ground for demurring to Adam's first amended petition was that the petition "fails to allege facts sufficient to constitute any legal basis for relief." The trustee's memorandum of points and authorities argued the petition could not "satisfy any of the required statutory elements for claiming relief under Section 21622," the sole basis for Adam's claim to a share of

---

[20]    The Nunc Pro Tunc order stated the court's ground and reasoning for sustaining the petition as: "The petition fails to allege sufficient facts demonstrating that Decedent omitted Petitioner Adam Ross solely because of an unawareness of his birth." Of course, a court sustaining a demurrer "is not required to state its reasons for sustaining the demurrer on the specified grounds." (*Fremont*, *supra*, 148 Cal.App.4th at p. 111.)

the Trust's assets.[21]  Accordingly, Adam was well aware of the ground on which the trustee demurred to the petition and on which the court based its decision to sustain the demurrer with leave to amend.  (See *Schuetram v. Granada Sanitary Dist.* (1964) 229 Cal.App.2d 25, 31 [contention that court erred in failing to state specific ground for sustaining demurrer was "frivolous" where demurrer raised only one ground and no "prejudice resulting from such irregularity" appeared].)

Finally, in his opposition to the trustee's demurrer to his second amended petition, Adam quoted from the court's Nunc Pro Tunc order and asserted he had cured the defect by alleging, " 'The sole reason that [O'BRIAN] did not provide for [ROSS] in his testamentary documents is because [O'BRIAN] was unaware of [ROSS]'s birth.' "  Adam, however, never argued he was unable to cure the defect identified in the trial court's Nunc Pro Tunc Order because he received the order too late.  And, "because nothing in the record indicates that [Adam] notified the trial court of its failure to state reasons . . . , [he] waived this requirement."  (*Lambert v. Carneghi* (2008) 158 Cal.App.4th 1120, 1128, fn.4.)

      d.    *Adam did not allege a request for relief under section 248*

Adam's contention that he adequately pleaded a claim under section 248 also is not well-taken.  He omitted his earlier allegations of standing under section 248 from his second

---

[21]    The first amended petition refers to section 248 as providing Adam standing, but Adam's claim to a share of the Trust is based only on section 21622.

amended petition.  The operative petition includes no allegations about section 248; it merely mentions the statute in the title.  Moreover, as the trial court concluded, section 248 is inapplicable.  That statute applies to persons interested in property that vests in a class of persons who are not identifiable as persons "embraced in" the description.  As the trial court explained, a "person obtaining an interest in property" under section 21622 is "readily identifiable and not a class of persons."

## DISPOSITION

The judgments against Kimberly Rallo and Adam Ross are affirmed.  The trustee is to recover her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

LAVIN, J.

35